BAZLEY *v.* COMMISSIONER OF INTERNAL
REVENUE.

NO. 287.

Argued January 10, 1947.—Decided June 16, 1947.

*Sydney A. Gutkin* argued the cause and filed a brief for petitioner in No. 209.

*Henry S. Drinker* argued the cause for petitioner in No. 287. With him on the brief were *Frederick E. S. Morrison* and *Calvin H. Rankin.*

*J. Louis Monarch* argued the cause for respondent. With him on the brief were *Acting Solicitor General Washington, Sewall Key, Arnold Raum* and *L. W. Post.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The proper construction of provisions of the Internal Revenue Code relating to corporate reorganizations is involved in both these cases. Their importance to the Treasury as well as to corporate enterprise led us to grant certiorari, 329 U. S. 695, 329 U. S. 701. While there are differences in detail to which we shall refer, the two cases may be disposed of in one opinion.

In the *Bazley* case, No. 287, the Commissioner of Internal Revenue assessed an income tax deficiency against the taxpayer for the year 1939. Its validity depends on the legal significance of the recapitalization in that year of a family corporation in which the taxpayer and his wife owned all but one of the Company's one thousand shares. These had a par value of $100. Under the plan of reorganization the taxpayer, his wife, and the holder of the additional share were to turn in their old shares and receive in exchange for each old share five new shares of no par value, but of a stated value of $60, and new debenture bonds, having a total face value of $400,000, payable in ten years but callable at any time. Accordingly, the taxpayer received 3,990 shares of the new stock for the 798 shares of his old holding and debentures in the amount of $319,200. At the time of these transactions the earned surplus of the corporation was $855,783.82.

The Commissioner charged to the taxpayer as income the full value of the debentures. The Tax Court affirmed the Commissioner's determination, against the taxpayer's contention that as a "recapitalization" the transaction was a tax-free "reorganization" and that the debentures were "securities in a corporation a party to a reorganization," "exchanged solely for stock or securities in such corporation" "in pursuance of the plan of reorganization," and as such no gain is recognized for income tax purposes. Internal Revenue Code, §§ 112 (g) (1) (E) and 112 (b) (3). The Tax Court found that the recapitalization had "no legitimate corporate business purpose" and was therefore not a "reorganization" within the statute. The distribution of debentures, it concluded, was a disguised dividend, taxable as earned income under §§ 22 (a) and 115 (a) and (g). 4 T. C. 897. The Circuit Court of Appeals for the Third Circuit, sitting *en banc,* affirmed, two judges dissenting. 155 F. 2d 237.

Unless a transaction is a reorganization contemplated by § 112 (g), any exchange of "stock or securities" in connection with such transaction, cannot be "in pursuance of the plan of reorganization" under § 112 (b) (3). While § 112 (g) informs us that "reorganization" means, among other things, "a recapitalization," it does not inform us what "recapitalization" means. "Recapitalization" in connection with the income tax has been part of the revenue laws since 1921. 42 Stat. 227, 230, § 202 (c) (2). Congress has never defined it and the Treasury Regulations shed only limited light. Treas. Reg. 103, § 19.112 (g). One thing is certain. Congress did not incorporate some technical concept, whether that of accountants or of other specialists, into § 112 (g), assuming that there is agreement among specialists as to the meaning of recapitalization. And so, recapitalization as used in § 112 (g) must draw its meaning from its function in that section. It is one of the forms of reorganization which obtains the privileges afforded by § 112 (g). Therefore, "recapitalization" must be construed with reference to the presuppositions and purpose of § 112 (g). It was not the purpose of the reorganization provision to exempt from payment of a tax what as a practical matter is realized gain. Normally, a distribution by a corporation, whatever form it takes, is a definite and rather unambiguous event. It furnishes the proper occasion for the determination and taxation of gain. But there are circumstances where a formal distribution, directly or through exchange of securities, represents merely a new form of the previous participation in an enterprise, involving no change of substance in the rights and relations of the interested parties one to another or to the corporate assets. As to these, Congress has said that they are not to be deemed significant occasions for determining taxable gain.

These considerations underlie § 112 (g) and they should dominate the scope to be given to the various sections, all of which converge toward a common purpose. Application of the language of such a revenue provision is not an exercise in framing abstract definitions. In a series of cases this Court has withheld the benefits of the reorganization provision in situations which might have satisfied provisions of the section treated as inert language, because they were not reorganizations of the kind with which § 112, in its purpose and particulars, concerns itself. See *Pinellas Ice & Cold Storage Co.* v. *Commissioner,* 287 U. S. 462; *Gregory* v. *Helvering,* 293 U. S. 465; *LeTulle* v. *Scofield,* 308 U. S. 415.

Congress has not attempted a definition of what is recapitalization and we shall follow its example. The search for relevant meaning is often satisfied not by a futile attempt at abstract definition but by pricking a line through concrete applications. Meaning frequently is built up by assured recognition of what does not come within a concept the content of which is in controversy. Since a recapitalization within the scope of § 112 is an aspect of reorganization, nothing can be a recapitalization for this purpose unless it partakes of those characteristics of a reorganization which underlie the purpose of Congress in postponing the tax liability.

No doubt there was a recapitalization of the Bazley corporation in the sense that the symbols that represented its capital were changed, so that the fiscal basis of its operations would appear very differently on its books. But the form of a transaction as reflected by correct corporate accounting opens questions as to the proper application of a taxing statute; it does not close them. Corporate accounting may represent that correspondence between change in the form of capital structure and essential identity in fact which is of the essence of a transaction

relieved from taxation as a reorganization. What is controlling is that a new arrangement intrinsically partake of the elements of reorganization which underlie the Congressional exemption and not merely give the appearance of it to accomplish a distribution of earnings. In the case of a corporation which has undistributed earnings, the creation of new corporate obligations which are transferred to stockholders in relation to their former holdings, so as to produce, for all practical purposes, the same result as a distribution of cash earnings of equivalent value, cannot obtain tax immunity because cast in the form of a recapitalization-reorganization. The governing legal rule can hardly be stated more narrowly. To attempt to do so would only challenge astuteness in evading it. And so it is hard to escape the conclusion that whether in a particular case a paper recapitalization is no more than an admissible attempt to avoid the consequences of an outright distribution of earnings turns on details of corporate affairs, judgment on which must be left to the Tax Court. See *Dobson* v. *Commissioner,* 320 U. S. 489.

What have we here? No doubt, if the Bazley corporation had issued the debentures to Bazley and his wife without any recapitalization, it would have made a taxable distribution. Instead, these debentures were issued as part of a family arrangement, the only additional ingredient being an unrelated modification of the capital account. The debentures were found to be worth at least their principal amount, and they were virtually cash because they were callable at the will of the corporation which in this case was the will of the taxpayer. One does not have to pursue the motives behind actions, even in the more ascertainable forms of purpose, to find, as did the Tax Court, that the whole arrangement took this form instead of an outright distribution of cash or debentures,

because the latter would undoubtedly have been taxable income whereas what was done could, with a show of reason, claim the shelter of the immunity of a recapitalization-reorganization.

The Commissioner, the Tax Court and the Circuit Court of Appeals agree that nothing was accomplished that would not have been accomplished by an outright debenture dividend. And since we find no misconception of law on the part of the Tax Court and the Circuit Court of Appeals, whatever may have been their choice of phrasing, their application of the law to the facts of this case must stand. A "reorganization" which is merely a vehicle, however elaborate or elegant, for conveying earnings from accumulations to the stockholders is not a reorganization under § 112. This disposes of the case as a matter of law, since the facts as found by the Tax Court bring them within it. And even if this transaction were deemed a reorganization, the facts would equally sustain the imposition of the tax on the debentures under § 112 (c) (1) and (2). *Commissioner* v. *Estate of Bedford,* 325 U. S. 283.

In the *Adams* case, No. 209, the taxpayer owned all but a few of the 5914 shares of stock outstanding out of an authorized 6000, par value $100. By a plan of reorganization, the authorized capital was reduced by half, to $295,700, divided into 5914 shares of no par value but having a stated value of $50 per share. The 5914 old shares were cancelled and the corporation issued in exchange therefor 5914 shares of the new no-par common stock and 6 per cent 20 year debenture bonds in the principal amount of $295,700. The exchange was made on the basis of one new share of stock and one $50 bond for each old share. The old capital account was debited in the sum of $591,400, a new no-par capital account was credited with $295,700, and the balance of $295,700 was

credited to a "Debenture Payable" account. The corporation at this time had accumulated earnings available for distribution in a sum not less than $164,514.82, and this account was left unchanged. At the time of the exchange, the debentures had a value not less than $164,208.82.

The Commissioner determined an income tax deficiency by treating the debenture bonds as a distribution of the corporation's accumulated earnings. The Tax Court sustained the Commissioner's determination, 5 T. C. 351, and the Circuit Court of Appeals affirmed. 155 F. 2d 246. The case is governed by our treatment of the *Bazley* case. The finding by the Tax Court that the reorganization had no purpose other than to achieve the distribution of the earnings, is unaffected by the bookkeeping detail of leaving the surplus account unaffected. See § 115 (b), and *Commissioner* v. *Wheeler,* 324 U. S. 542, 546.

Other claims raised have been considered but their rejection does not call for discussion.

*Judgments affirmed.*

MR. JUSTICE DOUGLAS and MR. JUSTICE BURTON dissent in both cases for the reasons stated in the joint dissent of Judges Maris and Goodrich in the court below. *Bazley* v. *Commissioner,* 155 F. 2d 237, 244.