## COMMISSIONER OF INTERNAL REVENUE v. EDMONDS' ESTATE et al.

### No. 9361.

Circuit Court of Appeals, Third Circuit.
Argued Nov. 18, 1947.
Decided Jan. 27, 1948.

---

\* See also Christensen Engineering Co. v. Westinghouse Air Brake Co., 2 Cir., 135 F. 774, 782.

Helen Goodner, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen., and Lee A. Jackson, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Richard V. Zug, of Philadelphia, Pa. (J. Warren Brock and Edmonds, Obermayer & Rebmann, all of Philadelphia, Pa., on the brief), for respondents.

Before MARIS, O'CONNELL, and KALODNER, Circuit Judges.

O'CONNELL, Circuit Judge.

The Commissioner of Internal Revenue appeals herein from a Tax Court decision holding that, in 1935, an exchange of old debentures for new collateral trust income bonds of the Portland Electric Power Company (hereinafter called Portland) was pursuant to a reorganization within the meaning of Sections 112(b) (3), 112(g) (1) (D), and 113(a) (6) of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev. Acts 1924 to date, pages 692, 695, and 697. Pertinent portions of the statute are set forth in the footnote below.[1]

---

[1] "§ 112. Recognition of Gain or Loss.

\* \* \* \* \* \* \*

"(b) Exchanges Solely in Kind—

\* \* \* \* \* \* \*

"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

"(g) Definition of Reorganization. As used in this section and section 113—

"(1) The term 'reorganization' means \* \* \* (D) a recapitalization \* \* \*."

"§ 113. Adjusted Basis for Determining Gain or Loss.

"(a) Basis (Unadjusted) of Property. The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

"(6) Tax-free exchanges generally. If

On September 26, 1934, Portland filed a petition for the relief of debtors under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. On December 21, 1934, the plan of reorganization incorporated in the petition was approved by the bankruptcy court. Thereafter it appeared that the plan as approved was subject to objection, in that no provision was made for possible claims by bondholders of Willamette Valley Southern Railway Company, the bonds of which company had been unconditionally guaranteed by Portland. Consequently, on February 11, 1935, Portland filed an amended plan of reorganization. The bankruptcy court confirmed the amended plan on March 5, 1935.[2]

Under the provisions of the confirmed amended plan, Portland was authorized and directed to issue $16,581,600 of 6% collateral trust income bonds. Of this issue, $581,600 was deposited in trust, to be applied, if necessary, against liability arising from the guaranty of the Willamette bonds; and the remaining $16,000,000 was to be exchanged, dollar for dollar face value, for the 6% debentures. The record does not reveal the differences between the debentures and the collateral income trust bonds; but both the plan and the decree of confirmation make it clear that the rights of Portland stockholders were not modified or altered by those court proceedings.

Taxpayer, a Pennsylvania attorney, in 1930 purchased Portland debentures of $5000 face value.[3] Pursuant to the decree of confirmation of the amended plan, he surrendered his debentures, on March 30, 1935, for $5000 face value of the collateral trust income bonds, plus $150 in cash as adjustment of the 1934 interest. At that time, the fair market value of the debentures surrendered was $406.25, the same as that of the collateral trust income bonds. Taxpayer did not claim a loss on the exchange in his 1935 income tax return.

In December, 1941, taxpayer sold the collateral trust income bonds for $747.50. On his 1941 income tax return, he claimed a capital loss of $4,227.50, the difference between the cost of the debentures in 1930 and the sale price in 1941. The Commissioner, upon the theory that the exchange in 1935 was one in which gain or loss was to be recognized, disallowed the loss. The Commissioner's position is that taxpayer should have claimed the loss in his 1935 tax return, and that actually taxpayer, by selling the bonds in 1941, had a taxable gain of $341.25 (the difference between $747.50, the sale price, and $406.25, the fair market value of the bonds in 1935).

The Tax Court, upon the authority of Commissioner v. Neustadt's Trust, 2 Cir., 1942, 131 F.2d 528, supported taxpayer's contention that the exchange in 1935 falls within the non-recognition provisions of the Revenue Act of 1934 set forth in footnote 1, supra.

■ Since the Tax Court in the instant case announced a rule of general applicability on a clear-cut question of law, viz., the proper construction of the pertinent

the property was acquired, after February 28, 1913, upon an exchange described in section 112 (b) to (e), inclusive, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. If the property so acquired consisted in part of the type of property permitted by section 112 (b) to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value at the date of the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it." 26 U.S.C.A., Int.Rev.Acts 1924 to date, pp. 692, 695, 697.

[2] The amended plan was accepted in writing by the holders of more than 77% of the aggregate of the outstanding bonds of Portland and Willamette. The plan was also approved by the state public utilities commission, as was required for a public utility wholly intrastate in character.

[3] The purchase price was $4975. At that time, Portland was known as Pacific Northwest Public Service Company.

statutory provisions, we may review that rule. See Crane v. Commissioner, 1947, 331 U.S. 1, 15, 67 S.Ct. 1047.

At the outset, it is not inapposite to note that the case at bar is not one in which the corporation involved is the alter ego of the taxpayer, or where the plan of reorganization was a vehicle for conveying earnings from accumulations to the stockholders. Cf. Bazley v. Commissioner, 1947, 331 U.S. 737, 740, 67 S.Ct. 1489. Taxpayer in the case at bar was but a minor creditor of Portland; and the exchanges in question were solely in kind. Taxpayer's exchange of indentures for bonds was not an act of his own inspiration, for the approval of the plan by the bankruptcy court left him no free choice. In short, the situation presented by the case at bar is not one of a scheme for tax avoidance.

■ The Commissioner concedes that the bonds and debentures here involved are "securities" within the meaning of Section 112(b) (3); see Helvering v. Watts, 1935, 296 U.S. 387, 389, 56 S.Ct. 275, 80 L.Ed. 289.[4] The exchange of bonds, therefore, was tax-free, unless, as the Commissioner contends, that exchange was not a "recapitalization." The Commissioner chooses to term the transaction a "refinancing," dealing exclusively with indebtedness; and he maintains that such "refinancing" is not the revision of capital structure contemplated by the word "recapitalization." He admits that Commissioner v. Neustadt's Trust, supra, is contrary to the position which he urges.[5]

In one respect, the case sub judice is even more favorable to taxpayer than the facts presented in the Neustadt's Trust case, supra. The latter case specifically favored a broad rather than a restricted meaning for "recapitalization," even though the taxpayers in that case voluntarily accepted a formal offer of exchange without court interposition; while in the case at bar taxpayer was enjoined by the bankruptcy court,

as the result of a formal proceeding, from enforcing "any right in, to or under said Debenture except in, to or under such rights of exchange as specifically given to such holder by the terms of this decree." Any question whether Congress meant to hold in suspense the recognition of gain or loss, until a more substantial change in taxpayer's original investment occurred, seems to us to disappear, where the exchange is of an involuntary nature and is precipitated by a formal court proceeding.

■ The Commissioner urges that persuasive weight should be accorded the "long continued and unchanged" administrative construction of "recapitalization" as not including "refinancing." Equally cogent, however, is the consideration that the Neustadt's Trust case, supra, determined the Congressional intent to be otherwise. The Commissioner suggests that an amendment effected by the Revenue Act of 1943 supports his position, in that specific provision was made for consummation of a plan of reorganization "by adjustment of the capital *or debt* structure"[6] (emphasis supplied); but, in the absence of more definite indications, it is at least as likely that Congress was merely spelling out the law as it had existed previously and in accordance with the Neustadt's Trust decision.[7]

Moreover, in determining the Congressional intent, we deem it not without significance that, less than one month after the passage of the Revenue Act of 1934, the same session of Congress specified that a plan of reorganization "shall include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise." Sec. 77B(b), 48 Stat. 913, 73rd Cong., Sess. II, Ch. 424, June 7, 1934, 11 U.S.C.A. § 207(b). Finally, this court has cited with approval the Neustadt's Trust decision. See United Gas

---

[4] See also Section 77B(b), 48 Stat. 914–915, 73rd Cong., Sess. II, Ch. 424, June 7, 1934, 11 U.S.C.A. § 207(b).

[5] Certiorari of the Neustadt's Trust decision was not requested.

[6] § 122, Revenue Act of 1943, 26 U.S.C.A. Int.Rev.Acts, Beginning 1940, page 449.

[7] It is likewise noted that § 121(d) (4) of the Revenue Act of 1943, 26 U.S.C.A. Int.Rev.Acts, page 448, promulgated after the Neustadt's Trust decision, amended the preamble to the definition of "reorganization" without also changing the "recapitalization" provision.

Improvement Co. v. Commissioner, 3 Cir., 1944, 142 F.2d 216, 218, certiorari denied 1944, 323 U.S. 739, 65 S.Ct. 52, 89 L.Ed. 592.

The Commissioner further contends that, since a bondholder has no proprietary interest in a corporation, the exchange in the instant case does not meet a basic test of LeTulle v. Scofield, 1940, 308 U.S. 415, 60 S.Ct. 315, 84 L.Ed. 355. The LeTulle case, however, involved a *merger* in which all the assets of one corporation were transferred in exchange for cash and bonds of another corporation. That situation is very different from a bona fide exchange, pursuant to a bankruptcy court proceeding, of old bonds for successor bonds *of the same corporation,* without substantially changing the original investment of the bondholders. See Helvering v. Limestone Co., 1942, 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775.

We conclude, therefore, that, as applied to the facts of the case at bar, "recapitalization" includes the exchange of debentures solely for bonds of like face value, of the same corporation, pursuant to a bona fide court reorganization of that corporation. The decision of the Tax Court must be affirmed.