H. Grady Manning Trust, Mrs. H. Grady Manning, Trustee, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Ruth Manning, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Joy Manning Scott, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 16249, 16250, 16251. Promulgated December 27, 1950.

John P. Ohl, Esq., for the petitioners.
Stanley B. Anderson, Esq., for the respondent.

934

## OPINION.

BLACK, *Judge:* The issue in these proceedings remaining after the stipulation is whether petitioners, The H. Grady Manning Trust and Ruth Manning, received taxable income in the year 1942 to the extent of the face value of debenture bonds received by them in that year from Lamark, together with common stock of Lamark, in exchange

for preferred stock of Southwest surrendered therefor. This, in turn, depends upon the question of whether the transaction whereby Southwest was merged into Lamark was a statutory reorganization within the meaning of section 112 (g) of the Internal Revenue Code,[1] and whether the exchange by the owners of preferred stock in Southwest for common stock and debentures in Lamark was a tax-free exchange within the provisions of section 112 (b) (3) of the Internal Revenue Code.[2]

Respondent sets forth his position in his brief with respect to the reorganization of the two corporations and the exchange by the preferred stockholders of Southwest of their preferred stock for common stock and debentures in Lamark, as follows:

With respect to petitioners' first contention, namely, that the merger of Southwest into Lamark was a reorganization within the scope of section 112, respondent agrees that there was a literal compliance with the provisions of section 112 (g) (1) (A) and (D). There is no question that the merger met the required "continuity of interest." However, the transaction requires more than a literal compliance with the statutes. The entire transaction must be motivated by a legitimate business purpose. Respondent contends that there was no legitimate business purpose for the issuance of the debenture bonds of Lamark in addition to its common stock.

We think respondent is entirely correct in conceding that the merger of Southwest into Lamark was a reorganization within the scope of section 112. Any one who reads the record in this case is bound to concede that fact—any other conclusion would be impossible. But while respondent concedes there was a literal compliance with the reorganization provisions of the statute, he contends there was no legitimate business purpose which motivated the reorganization; hence it should not be recognized. Respondent relies principally on *Gregory* v. *Helvering*, 293 U. S. 465; *Bazley* v. *Commissioner*, 331 U. S. 737 and *Adams* v. *Commissioner*, (same citation) in support of his contentions.

We think respondent's foregoing contentions were completely disproved by petitioners at the hearing. Louis R. Myers, who was a director and vice-president of both Southwest and Lamark at the

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

 \*　　　　　\*　　　　　\*　　　　　\*　　　　　\*

(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (1)) and in section 113 (other than subsection (a) (22)).—

(1) The term "reorganization" means (A) a statutory merger or consolidation, \* \* \* or (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred. \* \* \*

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

 \*　　　　　\*　　　　　\*　　　　　\*　　　・\*　　　　　\*　　　　　\*

(b) EXCHANGES SOLELY IN KIND.—

 \*　　　　　\*　　　　　\*　　　　　\*　　　　　\*　　　　　\*　　　　　\*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

time of the merger of Southwest into Lamark, explained the business reasons which motivated the merger, as follows:

We felt in our meetings [board of directors] that it was certainly the wise thing to do to simplify our corporate structure, eliminate the inter-company obligations, and unify our situation and our control over the management.

\* \* \* \* \* \* \*

There were two principal reasons, as I recall. First, we had the large issue of preferred stock outstanding with its many years of accumulated unpaid preferred stock dividends, and lawyers advised us that the only way to effectively eliminate that and cut them off forever would be to merge into another or new corporation. That was one of the principal reasons and furthermore we did not like to disturb our first and second mortgage loans in the lending institutions that had loaned against the underlying properties.

G. Russell Brown, who was neither an officer, nor director, nor stockholder of either corporation but was an accountant for both Southwest and Lamark and who had much to do with working out the plan of merger, explained the motivating reasons which were behind it, as follows:

In the first place, Southwest Hotels was set up originally by Mr. Manning as a vehicle for the acquisition of hotel properties and for the expansion of his hotel program. After Mr. Manning's death, the purpose of the Southwest Hotels had ceased to exist since the group no longer wanted to expand but rather wanted to consolidate its position; so the Southwest Hotels had debentures outstanding in some substantial amount, serial notes outstanding of substantial amounts on which there was several years interest; they had preferred stock outstanding on which there was some eleven or twelve years dividends due.

\* \* \* so we felt it would be best to make the principal operating company [Lamark] the top company of the hotel group.

D. K. Holmes, who was secretary and treasurer of both Southwest and Lamark, testified and corroborated Myers and Brown in their testimony.

Against this testimony respondent offered nothing except the facts which have been stipulated. None of these stipulated facts contradict in the slightest degree, so far as we can see, the testimony to which we have just referred. There are no facts in the record from which we could make an inference that the plan of reorganization which was carried out was conceived for the purpose of disguising the distribution of a taxable dividend to the stockholders of Southwest. Respondent argues that we should make such an inference, but if we did so such an inference would be absolutely devoid of any evidence to support it. A trier of the facts has no right to make inferences which are entirely contrary to the facts which have been proved. This, we decline to do.

On the facts we have found, and we now hold, that the merger of Southwest under the laws of Delaware into Lamark was a reorganization within the meaning of section 112 (g) and the exchange by the preferred stockholders of Southwest of their preferred stock for common stock and debentures of Lamark was an exchange which falls

directly within the provisions of section 112 (b) (3) and no gain or loss is to be recognized in such exchange, no other property having been received in the exchange. We further hold that the receipt by the preferred stockholders of Southwest of 20-year 6 per cent debentures of Lamark as a part of the securities for which they exchanged their preferred stock was not a taxable dividend as contended by respondent. *Commissioner* v. *Kolb*, 100 Fed. (2d) 920 and *South Atlantic Steamship Line*, 42 B. T. A. 705. Cf. *Commissioner* v. *Gilmore's Estate, et al.*, 130 Fed. (2d) 791, affirming 44 B. T. A. 881; *Commissioner* v. *Webster's Estate*, 131 Fed. (2d) 426. We think the cases of *Bazley* v. *Commissioner* and *Adams* v. *Commissioner*, both *supra*, relied upon by respondent are clearly distinguishable on their facts from the instant case, and we so hold.

The Commissioner is, therefore, reversed in his determination that the debentures of Lamark which petitioners received in the exchange are taxable as the distribution of a dividend.

*Decisions will be entered under Rule 50.*