**GRANITE TRUST COMPANY**

v.

**UNITED STATES of America.**

Civ. A. No. 52–637.

United States District Court
D. Massachusetts.

Dec. 30, 1955.

John Clarke Kane, Powers & Hall, Boston, Mass., for plaintiff.

Arthur I. Weinberg, Asst. U. S. Atty., Boston, Mass., for defendant.

McCARTHY, District Judge.

1. The plaintiff, Granite Trust Company, is a corporation organized under the laws of Massachusetts and is engaged in a general banking business with its principal office and place of business in Quincy, Massachusetts, within this district.

2. On or before March 15, 1944, Granite Trust Company filed its corporation income and declared value excess profits tax return, on an accrual basis, for the calendar year ending December 31, 1943.

3. The return disclosed income taxes due in the amount of $56,112.90, and no declared value excess profits tax due. The tax disclosed was paid.

4. The Commissioner of Internal Revenue determined a deficiency of $43,302.-34 in income tax liability and a deficiency of $2,236.55 in declared value excess profits tax liability. These additional taxes , and interest, in the aggregate amount of $57,801.32 were paid by the plaintiff on September 21, 1948.

5. The principal adjustment determined by the Commissioner in recomputing plaintiff's liability was the disallowance of a deduction taken by the plaintiff in the amount of $171,363.69 as a long-term capital loss.

6. On February 14, 1949 the plaintiff filed a timely claim for refund of the additional taxes and interest, alleged by the plaintiff to have been illegally assessed and collected.

7. On June 8, 1950 the Commissioner disallowed the claim. This action was brought within two years thereafter.

8. The deduction about which this dispute centers arose out of the disposition by the plaintiff in 1943 of shares of common stock of the Granite Trust Building Corporation. On December 1, 1943, the plaintiff owned all of the outstanding capital stock of Granite Trust Building Corporation (hereinafter referred to as "Building Corporation"). The Building

Corporation owned the land and building occupied by the plaintiff at 1400 Hancock Street, Quincy, Massachusetts. Said outstanding capital stock, on December 1, 1943 and at all times thereafter until liquidation of the Building Corporation consisted of 2,250 shares of preferred stock of $100 par value each. The common stock was the only voting stock of the Building Corporation. On December 1, 1943, all of said shares had been owned by the plaintiff for many years and the plaintiff had owned all the outstanding stock of the Building Corporation at all times since the latter's organization in 1928. The plaintiff paid $100 for each such share and the cost basis of said stock to the plaintiff for purposes of gain or loss, determined according to the provisions of the Internal Revenue Code, was at all times down to, and at, its disposition as herein described, $100 per share for each share of preferred stock, or $225,000 in the aggregate, and $100 per share for each share of common stock, or $500,000 in the aggregate.

9. On December 6, 1943, the Howard D. Johnson Co., a Massachusetts corporation, all of whose stock was owned by Howard D. Johnson, an individual, drew upon its account in Granite Trust Company, its check payable to plaintiff for the sum of $67,137.50 and delivered this check to plaintiff. The plaintiff on the same date caused to be transferred upon the books of the Building Corporation, to Howard D. Johnson Co., 1,025 shares of Building Corporation common stock (20.5% of the outstanding common stock) and a new certificate for the shares was issued and delivered. This certificate was held by Howard D. Johnson Co. until it was surrendered by it on December 17, 1943. Neither Howard D. Johnson Co. nor Howard D. Johnson owned any stock in the plaintiff. No stockholder or officer of Howard D. Johnson Co. was substantial tenant in the building owned by Building Corporation, paying a rent of about $13,700 per year.

10. On December 10, 1943, the stockholders of Building Corporation, at a meeting duly held, received from plaintiff a written offer to purchase all real estate or interests therein owned by the Building Corporation for a price of $550,000. It was voted to accept the offer and sell the real estate.

11. At the same meeting the following vote was adopted:

"That if and when this Corporation shall receive $550,000, adjusted as provided in the vote with regard to the sale of the Corporation's real estate, this Corporation shall be completely liquidated, and after payment or provision for payment of all debts of, claims against and obligations of this Corporation, all of its remaining assets shall be distributed at such time or times to stockholders of record at such date or dates, and under and subject to such circumstances as the Board of Directors may determine, to the stockholders of the Corporation pro rata in accordance with the respective priorities of the outstanding shares of the Corporation, provided, however, that such liquidation and distribution shall be entirely completed prior to December 30, 1943."

12. At such time the plaintiff was the holder of record of 3,975 shares (79.5%) of the then outstanding 5,000 shares of common stock, which 5,000 shares represented the total voting power in the Building Corporation. Said 3,975 shares were the only shares represented and acting at the meeting of December 10, 1943. A waiver of notice of said meeting was executed by Joseph T. Brennan of the Howard D. Johnson Co.

13. On December 13, 1943 the plaintiff caused to be transferred on the books of Building Corporation two lots of common stock, each lot consisting of 10 shares. On the same date the plaintiff similarly caused to be transferred two shares of the common stock to Greater Boston United War Fund, a charitable organization.

14. One lot of 10 shares was transferred to Howard D. Johnson individual-

ly. Johnson delivering to plaintiff his check in the amount of $655. The other lot of 10 shares was transferred to Ralph E. Richmond, Richmond delivering his check payable to plaintiff in the sum of $655. Richmond was a customer of the plaintiff and a personal friend of one of its vice presidents.

15. At no time after the above-described transfers did the plaintiff acquire any common stock in the Building Corporation.

16. On December 15, 1943 the plaintiff purchased from Building Corporation all the real estate owned by Building Corporation for the sum of $550,000, adjusted for local taxes, rentals and insurance. The property was conveyed to the plaintiff. The amount paid was a fair and reasonable price for the property on that date.

17. On December 17, 1943, the Building Corporation called for retirement at par all of its outstanding preferred stock and paid the plaintiff the sum of $255,000. On the same date Building Corporation paid a distribution in complete liquidation in the amount of $65.77 per share with respect to each share of its outstanding common stock. The plaintiff received a check of the Building Corporation in the amount of $259,988.81. Howard D. Johnson Co. received $67,414.25; Howard D. Johnson, $657.70; Ralph E. Richmond, $657.70, and the Greater Boston United War Fund $131.54.

18. On December 30, 1943 a final meeting of the stockholders of the Building Corporation was held. It was voted "That this Corporation having been completely liquidated, be dissolved and cease to exist", with authority to its directors and officer to take all steps necessary.

19. The computation of the losses claimed to have been suffered by the plaintiff in its taxable year 1943, in the above transactions with respect to common stock in the Building Corporation is as follows:

### Sales of Common Stock

|  | Shares | Basis | Received | Loss |
|---|---|---|---|---|
| Dec. 6, 1943 | 1025 | $102,500 | $ 67,137.50 | $ 35,362.50 |
| Dec. 13, 1943 | 10 | 1,000 | 655.00 | 345.00 |
| Dec. 13, 1943 | 10 | 1,000 | 655.00 | 345.00 |
| **In Complete Liquidation** | | | | |
| Dec. 17, 1943 | 3953 | 395,300 | 259,988.81 | 135,311.19 |
| | | Total claimed losses | | $171,363.69 |

The above computation is mathematically correct and applies to the shares their correct adjusted basis for purposes of gain or loss under the Internal Revenue Code. Whether they were recognizable and deductible is another question.

The plaintiff's claimed losses as above were shown and claimed in its return for the year 1943 as a deduction in the determination of its income subject to income and declared value excess profits tax.

20. In the taxable year 1943, in transactions not related to Building Corporation Stock, the plaintiff realized from sales of capital assets net short-term gains in the aggregate amount of $90,564.89 and net long-term gains in the aggregate amount of $51,428.75. It reported said capital gains and losses upon its return for that year. In its return it further reported, and offset against said capital gains, the amount of the claimed losses from the disposition of Building Corporation stock, thereby eliminating for the purpose of said return all said capital gains. The disallowance of the claimed losses by the Commissioner is responsible for the entire amount of the additional taxes here in controversy.

21. The Building Corporation was organized in April of 1928 at the instance

of the plaintiff for the purpose of acquiring land and constructing thereon a building to be occupied by plaintiff. It raised funds by the issuance of capital stock to the plaintiff and proceeded with such acquisition and construction at a total cost in excess of one million dollars. Beginning at least as early as 1936, the amount at which the Building Corporation stock, representing the building, was carried upon the books of the plaintiff was subjected to a continuous criticism by examiners of the Federal Deposit Insurance Corporation, and also in some instances by the Federal Reserve Bank and the Massachusetts Banking Commissioner. Responsive to these pressures the plaintiff in 1940 reduced the net figure of the Granite Trust Building Corporation stock on its books to $565,000, despite which examining authorities continued to press for annual reductions.

22. If the claimed losses upon the disposition of shares of common stock in the Building Corporation by the plaintiff as hereinbefore described are lawfully to be recognized and allowed as deductions in the computation of the plaintiff's taxable income of the calendar year 1943 as claimed by it, the plaintiff has overpaid its income taxes for that year in the sum of $43,302.34 with interest thereon of $11,660.19 and its declared value excess profits tax for the same year in the sum of $2,236.55 with interest thereon of $602.24, making the total amount of $57,801.32, and is entitled to recover the same with interest according to law.

Section 112 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112 provides in part as follows:

"§ 112. Recognition of gain or loss. * * * (b) *Exchanges solely in kind.* * * * (6) *Property received by corporation on complete liquidation of another.* No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if (A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property * * *."

In 1943 Granite Trust Company decided to purchase the building and to liquidate the Building Corporation. In order to give rise to a recognizable capital loss, Granite Trust Company, on advice of counsel, undertook to achieve this and through a series of step transactions purposely designed to avoid application of Section 112(b) (6) of the Internal Revenue Code of 1939.

In the course of the transactions the plaintiff made several sales and a gift. The purchasers bought their respective shares only as a favor to the plaintiff. At the end of twelve days the "purchasers" got their money back with a small profit of $.27 per share. In the case of the Howard Johnson Company this was $276.75 and in the case of the individuals it was $2.70 each.

A taxpayer has the legal right to decrease the amount of what would otherwise be his taxes, or even avoid them altogether by means which the law permits. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596. Substance, however, not form, controls, and the realities of a transaction must be examined in order to determine whether it is a mere formality without substance which may be disregarded for tax purposes. Higgins

v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; Bazley v. Commissioner, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782.

■ None of the steps taken by the taxpayer would have been taken except as parts of a general scheme to liquidate the Building Corporation in such manner as to achieve a tax reduction.

This was simply an attempt to take a deduction in a manner without legal or moral justification—to circumvent Section 112(b) (6) of the Internal Revenue Code.

Judgment for the defendant.