ROCKWELL SPRING & AXLE COM-
PANY, successor by merger to Stand-
ard Steel Spring Company,

v.

Stanley GRANGER, Collector of Internal
Revenue for the 23rd Collection Dis-
trict of Pennsylvania.

Civ. A. No. 10138.

United States District Court
W. D. Pennsylvania.

March 29, 1956.

Thomas J. McManus, W. A. Seifert (of Reed, Smith, Shaw & McClay), Pittsburgh, Pa., for plaintiff.

D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., Arthur Biggins, Sp. Atty., Kenneth Ray, Sp. Atty., Department of Justice, Washington, D. C., for defendant.

MARSH, District Judge.

The problem here centers on the distribution in December of 1946 of $147,000 by Muehlhausen Spring Corporation (hereinafter called "Muehlhausen"), a wholly-owned subsidiary of its parent, Standard Steel Spring Company[1] (hereinafter called "Standard"), in redemption of all of Muehlhausen's outstanding 6% cumulative preferred stock. Standard contends that the transfer constituted a partial liquidation of its subsidiary within the intendment of § 115(c) of the Internal Revenue Code of 1939. 26 U.S.C.A. § 115(c). Defendant claims the distribution was essentially the equivalent of a dividend within the meaning of § 115(g). The Commissioner of Internal Revenue assessed an income tax defi-

1. On September 30, 1953, Rockwell Spring & Axle Company, a Pennsylvania corporation, was merged with Standard Steel Spring Company and is now the plaintiff by amendment.

ciency against Standard for the year 1946 which was paid. Standard filed a timely claim for refund which was disallowed and subsequently instituted this action for the recovery thereof.

It is the opinion of the court that the claim should be rejected.

In 1940 Standard desired to purchase all the assets of Muehlhausen. Although not a competitor, it wanted to integrate the Muehlhausen line of products with those of its own manufacture, both corporations being in the same general line of business. The Muehlhausen shareholders, however, would not sell their assets as such and insisted upon selling all their stock. Consequently, Standard purchased all the outstanding shares of Muehlhausen for a total consideration of $1,359,500, i. e., $1,212,000 for all its common stock and $147,500 for its preferred stock consisting of 1,475 shares. The preferred stock had originally been issued by Muehlhausen in exchange for bonds and notes held in a predecessor company, for cash and in payment of salaries. Some of this stock had been retired prior to the purchase by Standard.

After the purchase, Muehlhausen paid a dividend of $1 per share on its common stock in the years 1940 and 1941, but did not pay further dividends on common stock in subsequent years until 1947; it paid a dividend of $6 per share on its preferred stock during all these years prior to redemption except in 1946 when a dividend of $3 per share was paid. In August 1946, at a directors' meeting consideration was given to declaring a dividend on the common stock, but nothing was decided. In October of 1946, Standard offered to sell the preferred stock to its subsidiary at cost and Muehlhausen accepted. The price which was paid in December, 1946, was charged to Muehlhausen's preferred stock account and not to its earned surplus account. The preferred stock was cancelled and retired.

At the time the resolutions implementing the transfer were made, Standard needed considerable money to finance an expansion program. Some of the officers and directors of Muehlhausen were also officers and directors of Standard.

In its tax return for 1946, Standard treated the distribution as the proceeds of a sale of the preferred stock, and reported no gain or loss.

As a subsidiary Muehlhausen prospered. It also expanded and modernized considerably during the first 6 years and continued to prosper and expand until liquidated in 1949. Its earned surplus increased from $357,000 on July 31, 1940, to $1,906,000 as of December 31, 1946; its annual net sales increased from $2,342,000 in 1941 to $4,004,000 in 1946; and its property, plant and equipment assets, net after allowances for depreciation, increased from $353,000 in 1940 to $919,000 in 1946.[2] It paid $126,250 dividends on its common stock in 1947 and $454,000 in 1948. On December 31, 1949, a complete liquidation was effected under the provisions of § 112(b) (6) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112(b) (6); all the assets of Muehlhausen subject to its liabilities were transferred to Standard in exchange for the common stock; no gain or loss was recognized to Standard on this liquidation.

The question whether a distribution in connection with a cancellation of stock is to be treated as essentially equivalent to the distribution of a taxable dividend or as a partial liquidation is one of fact and depends upon the circumstances of each case.[3] Perusal of the authorities does not disclose a clear cut formula in the circumstances of this case.

Cases represented by Commissioner of Internal Revenue v. Cordingley, 1 Cir., 1935, 78 F.2d 118; Commissioner of Internal Revenue v. Quacken-

---

2. From the time Muehlhausen was purchased in 1940 until the redemption took place in 1946, Muehlhausen spent over $1,000,000 for plant, equipment and land.

3. See Regulations of Commissioner of Internal Revenue, Reg. 111, § 29.115–9.

bos, 2 Cir., 1935, 78 F.2d 156; Patty v. Helvering, 2 Cir., 1938, 98 F.2d 717, seem to agree that stock, issued in good faith for a good business purpose, as it was here, when redeemed is not a taxable dividend within the provisions of § 115 (g). But the case of Kirschenbaum v. Commissioner, 2 Cir., 1946, 155 F.2d 23, 170 A.L.R. 1389, relying on Commissioner of Internal Revenue v. Estate of Bedford, 1945, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611, seems to have effectively overruled this doctrine so that now, regardless of how or why the stock was originally issued, if the net effect of the distribution is essentially equivalent to a dividend, § 115(g) applies. Cases apparently in accord with the revised doctrine are: Bazley v. Commissioner, 1947, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782, affirming 3 Cir., 1946, 155 F.2d 237; Boyle v. Commissioner, 3 Cir., 1951, 187 F.2d 557; Smith v. United States, 3 Cir., 1941, 121 F.2d 692.

■ Thus, a showing that the redemption price of the preferred stock was exactly the same amount as was paid for it, i. e., exchanged for bonds and notes, cash and salaries payable, does not conclusively establish a partial liquidation. In resolving the problem, it seems that greater influence is to be accorded the other circumstances surrounding the time and manner of the distribution. From these circumstances, we think the redemption of Muehlhausen's preferred stock in 1946 is not to be considered a partial liquidation. Except for a decrease in cash to the extent of the distribution, there was no evidence of any contraction of its assets or restriction in the scope of its activities. Only small cash dividends had been paid on the preferred stock and none on the common stock since 1942. The initiative for the distribution came from the parent stockholder in need of cash, and thereafter the subsidiary continued to operate at a profit. The practical result was a distribution in cash of accumulated earnings to the parent corporation whose complete ownership of its subsidiary was left undisturbed.

There is no specific statement in the records of Muehlhausen or Standard that the redemption of the preferred stock was related to a partial liquidation. However, it appears undisputed from the evidence that the liquidation of Muehlhausen had been intended ever since its stock was purchased in 1940 but for good business reasons had been postponed. The redemption of the preferred stock was certainly a step in carrying out the intent to liquidate. Nonetheless, in the light of the decisions of this Circuit cited above, as we understand them, we think subjective motives cannot overcome the objective facts which, in our opinion, not only fortify the presumption of correctness in favor of the Commissioner but also establish that the net effect of the distribution was essentially equivalent to a dividend. See also Flanagan v. Helvering, 1940, 73 App.D.C. 46, 116 F.2d 937; Commissioner of Internal Revenue v. Roberts, 4 Cir., 1953, 203 F.2d 304.

The defendant is directed to file within 15 days findings of facts and conclusions of law and an appropriate order in conformity with the foregoing opinion.