**MICRODOT, INC., Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 408, Docket 83–6214.**

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1983.

Decided Feb. 24, 1984.

Michael F. Duhl, Chicago, Ill. (Glen H. Kanwit, Michael A. Clark, and Hopkins & Sutter, Chicago, Ill.; Robert H. Ware, and Mattern, Ware, Stoltz & Fressola, Bridgeport, Conn., on the brief), for plaintiff-appellant.

Farley P. Katz, Atty., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Ernest L. Brown, Attys., Dept. of Justice, Washington, D.C.; Alan H. Nevas, U.S.Atty., Bridgeport, Conn., on the brief), for defendant-appellee.

Before TIMBERS, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Microdot, Inc. (Microdot) appeals from a judgment entered May 27, 1983 in the District of Connecticut, T.F. Gilroy Daly, *Chief Judge,* upon the recommendation of Magistrate Thomas P. Smith, granting the government's motion for summary judgment and denying Microdot's motion for summary judgment in a tax refund action commenced by Microdot to recover federal corporate income taxes for the calendar year 1975 in amount of $44,612, plus interest, claimed to have been erroneously assessed and collected.

The district court held that Microdot's issuance of debentures in exchange for nearly 10% of its outstanding common stock was a reorganization within the meaning of I.R.C. § 368(a)(1)[1] and that, accordingly, under I.R.C. § 1232(b)(2), Microdot incurred no original issue discount and could take no corresponding deduction. This appeal followed. We affirm.

### I.

The facts, having been stipulated, are not in dispute.

Microdot is a Delaware corporation with its principal office in Darien, Connecticut. On April 7, 1975, Microdot issued, pursuant to an exchange offer to its shareholders, $6,064,400 principal amount of a new issue of 10% Subordinated Sinking Fund Debentures, due February 1, 2000, in exchange for 404,298 shares of Microdot common stock. Stock was exchanged at the rate of $15 principal amount of debentures per share of stock. Each debenture was redeemable at $100 at maturity.

On the day after this exchange, a portion of the issue of debentures was traded over the counter at a price of $75 per $100 principal amount of debenture. The aggregate fair market value of the issue of debentures on the first day they were traded was $4,548,300. Microdot claims that the difference between the face amount of the debentures and the fair market value—$1,516,100 —represented an original issue discount within the meaning of I.R.C. § 1232(b)(1), entitling it to an amortized deduction in amount of $75,528 for the calendar year 1975.

In accordance with Treasury Regulations, Microdot sent a Form 1099–OID to each of the debenture holders, advising them of their proportionate share of the original issue discount reportable as income on their individual tax returns. Microdot filed information returns accordingly with the Internal Revenue Service (IRS).

On September 25, 1979, the IRS assessed additional income tax in amount $146,246, plus interest in amount $33,717, against Mi-

---

1. Unless otherwise stated, all statutory citations in this opinion are to sections of the Internal Revenue Code of 1954 as amended, which in turn correspond to sections of Title 26 of the United States Code, 1976 codification. For convenience we shall abbreviate the citations by referring to sections of the Code only, e.g. "I.R.C. § ——".

I.R.C. § 368(a)(1)(E) in relevant part provides:

"Definitions relating to corporate reorganizations.
  (a) Reorganization
    (1) In general
    For purposes of parts I and II and this part, the term "reorganization" means—
       \* \* \*
    (E) a recapitalization; ...."
I.R.C. § 1232(b)(2) in relevant part provides:
"In the case of a bond or other evidence of indebtedness, or an investment unit as described in this paragraph (*other than a bond or other evidence of indebtedness or an in-*

*vestment unit issued pursuant to a plan of reorganization within the meaning of section 368(a)(1) ...*), which is issued for property and which—
  (A) is part of an issue a portion of which is traded on an established securities market, or
  (B) is issued for stock or securities which are traded on an established securities market, the issue price of such bond or other evidence of indebtedness or investment unit, as the case may be, shall be the fair market value of such property. Except in cases to which the preceding sentence applies, the issue price of a bond or other evidence of indebtedness ... which is issued for property (other than money) shall be the stated redemption price at maturity." (emphasis added).
The italicized language was deleted by § 306(a)(9)(C)(i) of the Technical Corrections Act of 1982, Pub.L. No. 97–448, 96 Stat. 2365, 2404 (1982).

crodot for the calendar year 1975. Part of this additional tax resulted from the IRS' disallowance of the deduction taken by Microdot in the amount of $75,528 for what it claimed to be the first year's amortization of original issue discount. On October 10, 1979, Microdot paid the assessed amounts. On June 3, 1980, it filed a timely claim for refund of income tax paid. The claim sought the additional tax paid as a result of the disallowance of the original issue discount deduction.

The IRS neither allowed nor disallowed the claim for refund within six months. Microdot consequently commenced the instant action in the district court on March 31, 1981.

After the pleadings were closed, the parties filed a stipulation of facts. The parties thereupon filed cross-motions for summary judgment which the court referred to a magistrate. On March 28, 1983, the magistrate recommended that Microdot's motion be denied and that the government's motion be granted. These recommendations were accepted by the court and judgment was entered as stated above.

Despite Microdot's able written and oral arguments in our Court, we hold, for the reasons set forth below, that the 1975 exchange of debentures for common stock was a recapitalization within the meaning of I.R.C. § 368(a)(1)(E).

## II.

■ The sole issue on this appeal is whether Microdot's issuance of debentures in exchange for shares of its common stock constituted a recapitalization within the meaning of I.R.C. § 368(a)(1)(E). If we answer in the affirmative, as the government urges, then § 1232(b)(2), as it provided in 1975, specifies that the issue price of the debentures is the stated maturity price of the debentures, rather than the fair market value of the property received in exchange therefor, resulting in no original issue discount.

Microdot, in urging us to hold that the exchange of debentures for common stock was not a recapitalization within the mean-

ing of the statute, relies heavily on the fact that the transaction was a taxable event affecting the participating Microdot shareholders. The argument is that the terms "reorganization" and "recapitalization", found in § 368(a)(1), really only encompass transactions that are tax-deferred events for shareholders. Microdot claims, therefore, that its 1975 exchange with its shareholders is eligible for original issue discount treatment under § 1232(b)(2).

It is well to bear in mind that "[t]he propriety of a deduction does not turn upon general equitable considerations, such as a demonstration of effective economic and practical equivalence. Rather, it 'depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.'" *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 148–49 (1974) (quoting *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934)). In short, the burden is upon Microdot to establish that a deduction for the transaction clearly has been provided for by Congress.

(A) *The Statutory Provisions*

■ I.R.C. § 163 permits taxpayers to take as a deduction from adjusted gross income "all interest paid or accrued within the taxable year on indebtedness." As early as 1918, the IRS recognized that the aggregate difference between a bond issue's stated maturity price and initial cash price—the bond discount—was the economic equivalent of interest expense, and should be a permissible deduction. *National Alfalfa, supra*, 417 U.S. at 143–44 & n. 7. Such a deduction, however, was allowed primarily when the consideration paid for the bonds was cash. When the consideration was property other than money, the result was less certain. *E.g., Nassau Lens Co. v. Commissioner*, 308 F.2d 39 (2 Cir. 1962) (deduction available); *Montana Power Co. v. United States*, 232 F.2d 541, 545 (3 Cir.) (en banc) (concurring views of Kalodner and Staley, JJ.) (deduction not available), *cert. denied*, 352 U.S. 843 (1956). For a discussion of the deductibility of debt

discount in the context of a post-*National Alfalfa* case, see *Cities Service Co. v. United States*, 522 F.2d 1281, 1286–89 (2 Cir. 1974), *cert. denied*, 423 U.S. 827 (1975).

This uncertainty was removed in 1969 with the enactment of the Tax Reform Act of 1969. Pub.L. No. 91–172, 83 Stat. 487 (1969). Congress at that time amended I.R.C. § 1232 to provide explicitly that, upon a corporation's issuance of its own obligation for property other than cash, the difference between the stated maturity price and the issue price is deemed to be original issue discount.

I.R.C. § 1232(b)(2) then defines the issue price of a bond exchanged for property other than cash. Note 1, *supra*. With two exceptions, the statute provides a general rule that, as long as either a portion of the bond issue is traded on an established securities market or the property received for the bonds is stock or securities traded on an established securities market, the issue price is the fair market value of the property received by the corporation. In the event one of the two exceptions is present, or neither of the conditions is satisfied, the issue price is deemed to be the equivalent of the stated maturity price. In such a situation, of course, when the difference between the two values is zero, there is no original issue discount.

The government argues that one of the exceptions is present in the instant case and therefore that there could be no original issue discount. The relevant exception is for "a bond or other evidence of indebtedness . . . issued pursuant to a plan of reorganization within the meaning of section 368(a)(1). . . ." The title of I.R.C. § 368 is "Definitions Relating to Corporate Reorganizations." Section 368(a)(1)(E) provides that "the term 'reorganization' means—. . . (E) a recapitalization." Note 1, *supra*.

### (B) *Defining Recapitalization*

The term "recapitalization" is not defined in either the I.R.C. or the Treasury Regulations, although the latter list some examples of recapitalization, none of which is applicable here. Treas.Reg. § 1.368–2(e)

(1983). Under the predecessor to § 368(a)(1)(E)—Int.Rev.Code of 1939, § 112(g)(1), 26 U.S.C. § 112(g)(1) (1952)—some construction of the term recapitalization was made which may be useful here. In 1942, the Supreme Court defined recapitalization as a "reshuffling of a capital structure, within the framework of an existing corporation." *Helvering v. Southwest Consol. Corp.*, 315 U.S. 194, 202 (1942); *accord, United Gas Improvement Co. v. Commissioner*, 142 F.2d 216, 218 (3 Cir.), *cert. denied*, 323 U.S. 739 (1944); *L. & E. Stirn, Inc. v. Commissioner*, 107 F.2d 390, 391 (2 Cir.1939); *Berner v. United States*, 282 F.2d 720, 725 (Ct.Cl.1960); *Seide v. Commissioner*, 18 T.C. 502, 510 (1952); Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 14.17, at 14–72 (4th ed. 1979). For a discussion of the relationship between § 368 and other sections of the Code—but in a context different from that of the instant case—see *Aetna Casualty & Surety Co. v. United States*, 568 F.2d 811, 819–20 (2 Cir.1976). As may be gleaned from the legislative history of the 1954 Code, § 368(a)(1) merely restates the definitions of reorganization, including recapitalization, found in the predecessor § 112(g)(1). S.Rep. No. 1622, 83d Cong., 2d Sess. at 273 (1954), *reprinted in* 1954 U.S.Code Cong. & Ad.News 4621, 4911. In apparent recognition of this unchanged definition, the early cases have been cited in recent decisions. *E.g., Johnson v. Commissioner*, 78 T.C. 564, 572 (1982); *Lorch v. Commissioner*, 70 T.C. 674, 681 (1978), *aff'd*, 605 F.2d 657 (2 Cir.1979), *cert. denied*, 444 U.S. 1076 (1980).

Moreover, this definition was used by the IRS in a 1977 Revenue Ruling. Rev.Rul. 77–415, 1977–2 C.B. 311. There, a transaction was described in which a corporation exchanged new debentures for outstanding debentures and outstanding preferred stock. One of the questions posed regarding that transaction was precisely the one involved here: whether the corporation was eligible to take a deduction for original issue discount despite § 1232(b)(2). In answering the question, the IRS looked to

§ 368(a)(1)(E), its implementing regulations, and the definition of recapitalization set forth by the Supreme Court in *Southwest Consol. Corp., supra.* The IRS ruled that the transaction was a reshuffling of a capital structure resulting in no original issue discount. The ruling was based on the definition of the issue price of debentures, issued pursuant to a plan of reorganization, set forth in § 1232(b)(2). The ruling did not refer to the tax consequences to the shareholders even though the preferred shareholders who received the new debentures sustained a fully taxable redemption under § 302.

Microdot seeks to counter this impressive array of authority with two arguments. First, it argues that the authority of the cases referred to above in effect was overruled by the enactment in 1954 of I.R.C. § 354(a)(2)(B),[2] which makes the non-recognition provisions inapplicable to a transaction in which a shareholder receives only bonds and gives up only stock, as in the case of the Microdot shareholders. This strikes us as a misleading oversimplification. While § 354(a)(2)(B) would have required a different result if it had been in effect when the cases were decided under the 1939 Code, it would have done so only insofar as the taxability of the exchange to the shareholders was involved. Section 354(a)(2)(B) does not purport to define recapitalization; indeed, the term is not mentioned. As stated above, the 1954 Code reenacted the 1939 Code definition of reorganization without change and without definition of recapitalization. We conclude that § 354(a)(2)(B) does not bear on the issue before us.

Microdot's second argument is based on what we believe to be a misinterpretation of *Bazley v. Commissioner,* 331 U.S. 737 (1947). In *Bazley,* the two individual taxpayers owned all but one of 1000 shares of a family corporation. In the transaction there involved, the taxpayers exchanged all of their shares of common stock for a pro rata number of new shares of common stock and $400,000 principal amount of ten-year debentures.[3] The taxpayers claimed that the gain realized on their receipt of the debentures should not be recognized because the transaction was a recapitalization within the meaning of I.R.C. § 112(g)(1)(D) (the 1939 Code predecessor of § 368(a)(1)(E)), and I.R.C. § 112(b)(3) postponed the recognition of gain by a taxpayer who received obligations as part of such a recapitalization. The IRS contended that the transaction in fact was a dividend disguised as a recapitalization. Support for the IRS contention could be found in the fact that the taxpayers maintained control of the corporation in the same ratio as they had prior to the transaction.

The *Bazley* Court agreed with the IRS and held that the taxpayers could not postpone the recognition of their gain. The thrust of the decision was that, while the transaction resembled a reorganization that might warrant tax-deferred treatment, the resemblance was only in a technical sense. The Court discussed the characteristics of the types of transactions for which Congress permitted taxpayers to postpone the recognition of their gains, but held that this essentially dividend-like transaction had none of those characteristics.

It was in the foregoing context that the Court made the statement upon which Microdot places heavy reliance:

"Since a recapitalization ... is an aspect of reorganization, nothing can be a recapitalization for this purpose unless it partakes of those characteristics of a reorganization which underlie the purpose of Congress in postponing the tax liability."

---

**2.** I.R.C. § 354(a)(2)(B) in relevant part provides:

"Limitation—Paragraph (1) [non-recognition of gain to shareholders] shall not apply if—

\* \* \*

(B) any such securities are received and no such securities are surrendered."

**3.** It appears that the distribution of the debentures in the instant case was not pro rata among Microdot shareholders. The exchange offer was made to all shareholders, who numbered over 25,000 after the exchange. Microdot tacitly concedes that this was not a pro rata distribution.

331 U.S. at 741. Microdot contends that this statement sets forth the prerequisites for a recapitalization under the present § 368(a)(1)(E). It summarizes its position by asserting that, to qualify as a recapitalization-reorganization, a transaction must be one which was intended to be afforded tax-free treatment.

We disagree with Microdot's reading of *Bazley.* Our reason is simple: the interpretation suggested by Microdot takes the above-quoted language out of context and assumes that the Court was focusing on the definition of recapitalization rather than on the true issue in the case, namely, whether the Bazleys could postpone their tax liability. Indeed, Microdot has ignored the significance of the phrase "for this purpose" within that quoted sentence. In our view, what the Court was saying was that no transaction can be labeled a recapitalization for the purpose of tax postponement treatment unless it partakes of those characteristics which underlie the purpose of Congress in postponing tax liability. We do not believe that the Court was addressing both the question of tax deferral for the Bazleys and the definition of recapitalization. We think it is clear from the context of the case and other language of the opinion that the Court did not intend to focus on the word recapitalization.[4]

In short, contrary to Microdot's arguments, the definition of reorganization, with its inclusion of recapitalization, does not incorporate any reference to the tax consequences of a transaction to the shareholders. Section 368(a)(1) is a definitional section,[5] wholly distinct from § 354.

Having reached this conclusion, we wish to point out that in § 1232(b)(2), in which Congress excluded bonds issued in reorganizations as defined in § 368(a)(1) from original issue discount treatment, Congress did not expressly limit the exclusion to reorganizations that are tax free.[6] Absent any "clear provision" of "legislative grace,"[7] which must be shown before a deduction may be allowed, we affirm the district court and hold that bonds issued in reorganizations pursuant to § 368(a)(1)—whether or not taxable to the shareholders—are not

---

**4.** Microdot has ignored other language in *Bazley* which indicates that the appropriate inquiries in cases where non-recognition is sought by a shareholder are, first, whether the transaction fits the mechanical definition of reorganization, and, second, whether it truly is the type of transaction deserving of the non-recognition provisions provided by Congress.

> For example:
> "No doubt there was a recapitalization of the Bazley corporation in the sense that the symbols that represented its capital were changed, so that the fiscal basis of its operations would appear very differently on its books. But the form of a transaction as reflected by correct corporate accounting *opens questions as to the proper application of a taxing statute;* it does not close them....
> ... No doubt, if the Bazley corporation had issued the debentures to Bazley and his wife *without any recapitalization,* it would have made a taxable distribution."

331 U.S. at 741–42 (emphasis added).

**5.** Professors Bittker and Eustice label it as such. They point out the contrast with the more restrictive provisions contemplating tax consequences. Bittker & Eustice, *supra,* ¶ 14.-17, at 14–76 n. 186.

**6.** Microdot refers to a letter written by a Treasury Department official to Senator Williams urging that an amendment be made to the Tax Reform Act of 1969 to add the language about reorganizations found in § 1232(b)(2) at the time of Microdot's transaction. Microdot claims that this letter indicates why Congress added the language in question. In the letter there is a discussion of how a loophole would be created in tax-free asset reorganizations if the language were not added. Aside from the propriety of ascribing much weight to a single letter in determining legislative intent, we point out that the letter does not purport to be exhaustive of the reasons why bonds issued in reorganizations should be excluded from original issue discount treatment. If it were, the Treasury Department would not have requested the broad language it did and which was enacted; it would have been content to request language that limited the exception to tax-free reorganizations.

**7.** In view of the requirement that a deduction must be clearly provided for, we find no merit in Microdot's arguments regarding the absence of any potential for abuse in its exchange transaction. Similarly, while Congress amended § 1232(b)(2) in 1982 to remove the reorganization language, that is not relevant to this case and this transaction which occurred in 1975.

eligible for original issue discount treatment.

Costs to appellee in this Court.

Affirmed.