**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Roger W. POPE et al., Respondents.**

**No. 5158.**

United States Court of Appeals
First Circuit.

Jan. 8, 1957.

Meyer Rothwacks, Attorney, Department of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and I. Henry Kutz, Attorneys, Department of Justice, Washington, D. C., were on brief, for petitioner.

Samuel S. Dennis, 3rd, Washington, D. C., with whom Edmund Burke, Norman B. Asher and Hale & Dorr, Boston, Mass., were on brief, for respondents.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This petition by the Commissioner of Internal Revenue for review of a decision of the Tax Court of the United States presents a single issue on undisputed facts.

The taxpayer owned a substantial majority of the stock of two separate and distinct corporations, both of which had earned surpluses in six figures because neither had ever paid any substantial dividends but had retained its earnings for expansion. In November, 1949, the taxpayer sold 83 of his shares in one corporation to the other for $25,000 in order to obtain funds for investment in a business quite unrelated to that in which either corporation was engaged. He had acquired these shares prior to 1941 for $100 each and his sale price of approximately $301.20 each was based on the estimated book value of the shares at the end of the preceding year plus corporate earnings from that time to the date of the sale. The taxpayer in the joint return which he filed with his wife for 1949 reported his profit from this transaction as a long-term capital gain. The Commissioner did not agree with this tax treatment but, asserting that the "sale" was a sham, insisted that the $25,000 which the taxpayer received for his stock from the purchasing corporation was actually a distribution from its accumulated earnings and profits, i. e. a dividend, which should be reported and taxed as such.

By appropriate proceedings the controversy was presented to the Tax Court.

It agreed in the main with the taxpayer. It found as a fact from the evidence before it of corporate earning power and net book value that the fair market value of the stock at the time of its sale was not approximately $301.20 per share as claimed by the taxpayer but was in fact $295.00 per share. Then, finding that the sale did not lack economic reality, it adhered to its decisions in John Wanamaker (Phila.) Trustees Common Stock, 1948, 11 T.C. 365, affirmed per curiam, 3 Cir., 1948, 178 F.2d 10, and Cramer, 1953, 20 T.C. 679, which the Commissioner had asked it to reconsider and overrule, and held that while the difference between its and the taxpayer's calculations with respect to the fair market value of the stock ($515) constituted a dividend and was taxable as such, the remainder of the sum received from the stock ($24,485) was money derived from the sale of a capital asset, the profit increment of which was taxable at the long-term capital gains rate. It summarized its conclusion by stating:

"We, therefore, hold that petitioner is taxable on the receipt of a dividend from Johnson [the short name of the corporation to which the stock was sold] to the extent of $515, the difference between the purchase price and the fair market value of the 83 Webb [the short name of the corporation whose shares were sold by the taxpayer to Johnson] shares on November 18, 1949. The balance of the $25,000 payment represents the proceeds of a sale taxable to petitioner as long-term capital gains."

The Commissioner does not challenge the finding of the Tax Court that the shares of Webb stock sold by the taxpayer to Johnson had a fair market value of $295 each at the time of the sale. Nor does the Commissioner, except collaterally, attack the Tax Court's analysis of the applicable statutes or its reasoning based on its analysis. That is to say, he does not directly urge us to overrule the Tax Court on its interpretation of law, and, inferentially, overrule its prior decisions in the Wanamaker and Cramer cases, which, particularly the latter, are certainly in point. We find no occasion, therefore, to recapitulate the Tax Court's statutory analysis and legal reasoning. It will suffice to say that we agree.

The Commissioner's contention undercuts the Tax Court's interpretation of the statutes involved. It is that in tax matters the substance of a transaction must control, not its form, and that the Tax Court erred in failing to recognize that while the taxpayer's transaction in Webb stock with Johnson was cast in the form of a sale, it was in fact only a "formalistic" one, "utterly lacking in economic reality and corporate purpose" and "nothing more than a device by which Johnson's distribution of dividends to the taxpayer was disguised as a capital gain transaction." Wherefore he says that we should evaluate the evidence ourselves, which he says we are in as good a position to do as the Tax Court for most of it was stipulated and the rest of it, oral and documentary, was not disputed, and on our own evaluation conclude that the sale was a sham devised for no other purpose than to cloak the distribution of a dividend. We do not agree.

Whether any given transaction on its established facts constitutes in law a "sale," or, for instance a "lease" or perhaps a "mortgage," is certainly a question of law. But whether a particular transaction concededly falling within the legal definition of a "sale" is bogus, a fiction without economic reality, a sham, is with equal certainty a question of fact. Thus, under a principle too well established to require citation of authority, the Tax Court's finding that the sale in question was a genuine transaction having economic reality must stand unless we can say on the record as a whole that the finding is "clearly erroneous." This we are not prepared to do.

It is true, as the Commissioner says in his brief, that "the facts are undisputed that the taxpayer owned the substantially controlling interests in two brother-

sister corporations; that he needed money to enter into an individual enterprise totally unrelated to the businesses of the corporations; that in order to obtain the necessary funds, he 'sold' to one company 83 shares which he owned in the other, receiving therefor $25,000; that despite the transfer, his substantial control over the company whose stock was 'sold' nevertheless remained essentially unchanged and unimpaired; and that in the year in which the transferee corporation paid him the $25,000, it had a surplus account exceeding $100,000, having made virtually no dividend distribution at any time." And it is also true that the taxpayer as the majority stockholder in the transferee corporation could have had that corporation declare a dividend payable out of its accumulated surplus and obtained the $25,000 he wanted by that means. But it does not follow from the above facts, as the Commissioner contends, that the Tax Court was "clearly in error" in holding that for tax purposes $24,485 of the $25,000 which the taxpayer received from the transferee corporation, that is to say, the amount which the Tax Court found to be the fair market value of stock at the time of its transfer, represented the proceeds of a sale taxable as long-term capital gains rather than a dividend distribution.

The reason for this is that the factors enumerated above are common to all transactions of the kind under consideration. They do not serve to differentiate this case from the Cramer case on which the Tax Court relied. Thus unless the Tax Court in the case at bar and in the Cramer case was wrong in its law, and we do not think that it was, all transactions of this kind on the Commissioner's argument would result in the payment of a dividend by the transferee corporation taxable as such to the stockholder. We must, therefore, look beyond the facts enumerated above for indications pointing to a spurious transaction between this particular taxpayer and his corporation. Looking at the record, we find none.

Perhaps this is all that needs to be said. But nevertheless, for what it is worth, we might address ourselves briefly to the Commissioner's contention that from the point of view of the transferee corporation there was no business purpose for its purchase of the taxpayer's stock and that lack of corporate business purpose for the transaction points to the conclusion that the sale of stock to it was not what it purported to be but a sham. See Keefe v. Cote, 1 Cir., 1954, 213 F.2d 651, 656, 657.

■ No doubt the object of the transaction from the taxpayer's point of view was to provide him with funds for an independent business venture of his own. And, no doubt, that object could have been attained by the taxpayer having the transferee corporation declare a dividend instead of purchasing 83 shares of his stock in its sister corporation. But the taxpayer was not required to take the route that leads inevitably to the greater tax. Furthermore, the transferee corporation by declaring a dividend would necessarily decrease its surplus by the amount of the dividend, whereas by purchasing the taxpayer's stock it merely transferred part of its surplus cash into stock of equal value, thereby maintaining its surplus position. Thus the "net effect" of the transaction was not a distribution of surplus. And there was a corporate business purpose for the transaction taking the form it did for it may well have been to the purchasing corporation's business advantage to keep its surplus intact by buying the taxpayer's stock rather than to deplete its surplus by declaring a dividend.

The decision of the Tax Court will be affirmed.