Charles P. **HASBROOK** and Marcia B. Hasbrook, Plaintiffs-Appellants,

v.

**UNITED STATES** of America, Defendant-Appellee.

No. 343, Docket 29351.

United States Court of Appeals Second Circuit.

Argued Feb. 18, 1965.

Decided April 14, 1965.

A. Pearley Feen, Burlington, Vt., for appellant.

Jonathan S. Cohen, Attorney, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attorneys, Dept. of Justice, Washington, D. C., and Joseph F. Radigan, U. S. Atty., for District of Vermont, of counsel), for appellee.

Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge:

The taxpayer (Marcia B. Hasbrook is a party only because she and her husband filed a joint return) brought an action in the district court for refund of taxes for the year 1957 paid under a deficiency assessment of the Commissioner of Internal Revenue. The Commissioner claimed that $27,000 received by the taxpayer from one of two brother-sister corporations controlled by him, in exchange for 270 shares of preferred stock of the other corporation, was a corporate distribution "essentially equivalent to a dividend" under Sections 302(b) (1) and 304(a) (1) of the Internal Revenue Code of 1954. The district court agreed and dismissed the taxpayer's complaint except for a matter not here relevant. We affirm.

The facts in this case are undisputed.

WCAX Radio, Inc. (Radio), had one hundred shares of common stock of which taxpayer owned all except two qualifying shares. Radio's books as of December 31, 1957, showed an earned surplus of $28,-678.51, and $98,027.81 of undistributed earnings and profits in its common stock (or capital investment) account. Radio had never distributed any dividends.

In Mt. Mansfield Television, Inc. (TV), taxpayer owned 598 of the 1000 shares of voting common stock, and thus had voting control. He also owned 270 shares of $100 par preferred stock; his stepson Martin owned 130 such shares; and others owned the remaining 600 of the total 1000 shares of TV preferred.

The Radio and TV corporations had been separately incorporated in 1954, but their operations in radio and TV broadcasting in Burlington, Vermont, were necessarily intertwined. A new building was needed in order to improve operations and a builder was found to construct for $130,000 a combined radio-TV building to be owned by the builder and leased by TV. The builder could raise $100,000 but needed $30,000 additional financing. It was agreed that this was to be loaned by TV. Since TV had large debts and an operating deficit, it could not itself make this $30,000 loan nor could it obtain a loan directly from the lending

institutions which were consulted. A complicated series of transactions was suggested by a local bank: Hasbrook and Martin would sell their 400 shares of TV preferred to Radio for $40,000; Radio would pledge this stock with the bank for a $24,000 loan; the bank would lend an additional $16,000 to Radio on Hasbrook's unsecured note, thus providing Radio with $40,000 in cash to pay Hasbrook and Martin; and Hasbrook and Martin would lend $26,000 to TV, which, together with $4,000 loaned by others, would provide TV with $30,000 in cash to finance the construction of the new building. This transaction was accomplished in 1957. Thereafter the builder constructed the building and leased it to TV. Radio and TV paid off their loans. Between 1959 and 1961 TV redeemed its shares of $100 par preferred at a premium of two dollars a share.

If Radio's payment to the taxpayer of $27,000 for his 270 shares of TV preferred was a dividend, then, under Section 301(c) (1) of the Code the distribution is to be included in gross income and is taxable as ordinary income. If the payment was not a dividend it was entitled to special tax treatment (Section 301(c) (2), (3)).

■ Since taxpayer controlled both TV and Radio the acquisition by Radio of the stock of TV is to be treated under Section 304(a) (1) as a redemption by Radio of its own stock. The proceeds of such a redemption are to be treated under Section 302(a) "as a distribution in part or full payment. in exchange for the stock" if any one of four tests set forth in Section 302(b) applies to the redemption. Taxpayer claims that the redemption is covered by Section 302(b) (1) which provides that Section 302(a) "shall apply if the redemption is not essentially equivalent to a dividend."

■ We hold, however, that Section 302(b) (1) has no application because the distribution to taxpayer of the $27,000 was essentially equivalent to a dividend.

This court has recently stated that "[t]he hallmarks of a dividend * * * are pro rata distribution of earnings and profits *and* no change in basic shareholder relationships." Himmel v. Commissioner, 338 F.2d 815, 817 (1964).

Here the distribution came from Radio's earnings and profits. It was a pro rata distribution since any distribution to the sole owner of the corporation's stock is necessarily pro rata. The distribution effected "no change in basic shareholder relationships." Taxpayer continued after the distribution to hold exactly the same proportion of the common stock of TV and Radio which he had held before the distribution. As for the preferred stock of TV [1] he had actually parted with none of his 270 shares since after the transaction was accomplished he still held, for all practical purposes, the same 270 shares through his ownership of the stock of Radio.[2] Realistically, then, the distribution resulted in no

---

[1]. In § 304(b) (1), among the "special rules for application of subsection (a)," is a "rule for determinations under section 302(b)" which provides in part:

"In the case of any acquisition of stock to which subsection (a) of this section applies, determinations as to whether the acquisition is, by reason of section 302(b), to be treated as a distribution in part or full payment in exchange for the stock shall be made by reference to the stock of the issuing corporation."

Determination by reference to stock of the issuing corporation is clearly relevant to provisions. of § 302 other than § 302(b) (1). To the extent that the special rule is applicable to § 302(b) (1) it may be taken to refer to the test for dividend equivalence of "change in basic stockholder relationships." The amount which is a dividend is to be determined by reference to the "earnings and profits of the acquiring corporation." § 304(b) (2) (A).

[2]. Taxpayer raises the point that Radio purchased the 130 preferred shares of TV belonging to Martin as well as the 270 shares belonging to taxpayer. The payment to taxpayer is not less a "dividend" because Martin also sold stock to Radio. The relevant consideration is the effect of the transaction as between the taxpayer and the acquiring corporation.

**814**

change in the pre-existing situation, except that taxpayer had in his own hands $27,000 which had formerly been in the earnings and profits of Radio. It seems clear to us, therefore, that the distribution was essentially equivalent to a dividend.

Taxpayer urges that the distribution should not be treated as a dividend because the transaction as a whole had "a business purpose."

This court has stated that the business purpose of a transaction is irrelevant in determining dividend equivalence, Northup v. United States, 240 F.2d 304, 307 (2d Cir. 1957). See also McGinty v. Commissioner, 325 F.2d 820, 821–822 (2d Cir. 1963). Here the character of the business purpose raises a further question. The taxpayer argues that the bank was willing to lend to Radio, rather than to TV directly, because of Radio's better credit rating. Similar arguments that certain redemption transactions were intended to improve a corporation's credit rating with outside institutions and that these transactions should therefore be held not equivalent to a dividend were rejected in Kerr v. Commissioner, 326 F.2d 225, 231–232 (9th Cir.), cert. denied, 377 U.S. 963, 84 S.Ct. 1644, 12 L.Ed.2d 735 (1964); Bradbury v. Commissioner, 298 F.2d 111, 117–118 (1st Cir. 1962); and United States v. Fewell, 255 F.2d 496, 499–500 (5th Cir. 1958). However the transaction might have been arranged to avoid the issue of dividend equivalence, it is plain that the taxpayer's purpose here was to utilize the high credit rating of Radio owing to its retention of earnings in order indirectly to effect a loan to TV. This is not, we believe, the sort of transaction that Congress intended to protect from the effects of dividend equivalence.

Affirmed.

See Phelps v. Commissioner, 247 F.2d 156, 158–159 (9th Cir. 1957).

Moreover, the effect of the transfer was that when Radio purchased Martin's shares for $13,000 out of its earnings and profits, the shares became in reality the property of taxpayer through his ownership of the common stock of Radio. Surely this cannot be used as an argument against his being taxed on $27,000 out of the total of $40,000 paid out by Radio for the preferred stock.