Ray A. MAHER and Rose M. Maher,
Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.**

Ray A. MAHER, Transferee, Petitioner-
Appellee,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellant.**

Nos. 71–1601 and 71–1635, 71–1602
and 71–1636.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1972.

Decided Nov. 2, 1972.

John J. Alder, Overland Park, Kan., for Maher et al.

Janet R. Spragens, Atty., Department of Justice, Tax Division, Washington, D. C., for Commissioner.

Before MATTHES, Chief Judge, and LAY and HEANEY, Circuit Judges.

MATTHES, Chief Judge.

These appeals are from two decisions of the Tax Court, one sustaining a deficiency income tax assessment of $184,073.30 against Ray A. Maher and his wife, Rose,[1] the other sustaining taxpayer's liability as transferee. Taxpayer has filed two appeals, one on behalf of himself and his wife, and one solely on behalf of himself as transferee. The Commissioner of Internal Revenue, while seeking affirmance of the Tax Court's decisions, has filed protective appeals in both cases. All appeals have been consolidated.

The facts, which are not in dispute, are fully delineated in the opinion of the Tax Court, reported at 55 T.C. 441 (1970). We review the essential facts in order to convey a proper understanding of the issues generated by the transactions under consideration.

In April, 1963, taxpayer entered into an agreement for the purchase of all of the outstanding stock of four corporations, Selectivend, Surevend, Selvend and Selvex. The total sale price was $500,000.00, of which $250,000.00 was represented by two interest-bearing promissory notes executed by taxpayer and payable in annual installments over a ten-year period.

In accordance with the agreement, the stock certificates of the four corporations were endorsed in blank and placed in escrow as collateral security for the payment by taxpayer of the installment notes.

On December 31, 1963, as part of a plan to combine the assets and operations of Selvex with Selectivend, taxpayer assigned his contractual interest in the Selvex stock to Selectivend in exchange for the latter's assumption of taxpayer's liability on the promissory notes. Taxpayer remained secondarily liable on the notes, and the stock certificates continued to be held in escrow.

Selvex was dissolved on March 31, 1964, and its assets and liabilities were taken over by Selectivend. Surevend and Selvend were subsequently liquidated on June 30, 1965, and Selectivend was itself officially dissolved on October 16, 1967, and its assets transferred to taxpayer.

Prior to dissolution Selectivend made the following payments of principal and interest on the two notes:

| Year | Principal | Interest |
|------|-----------|----------|
| 1965 | $ 25,000.00 | $12,500.00 |
| 1966 | $ 25,000.00 | $11,250.00 |
| 1967 | $200,000.00 | $10,000.00 |

Selectivend deducted the interest payments on its corporate tax returns for the appropriate years. After final pay-

---

[1]. Rose M. Maher is a party to these proceedings only because she and her husband filed joint tax returns during the years in question. Hereinafter, "taxpayer" will refer to Ray A. Maher.

ment, all stock was released from escrow.

The Commissioner determined that taxpayer realized income taxable as a dividend to the extent of the earned surplus of Selectivend either in the year Selectivend assumed taxpayer's liability on the notes (1963), or, alternatively, in the years Selectivend made principal and interest payments thereon (1965, 1966, 1967). If the dividend occurred in the years of payment, the Commissioner determined that the deductions claimed by Selectivend for the interest payments were not allowable, and therefore taxpayer, as Selectivend's transferee, was additionally liable for the resulting deficiencies.

Taxpayers Maher and wife petitioned the Tax Court for a redetermination of the deficiencies alternatively alleged by the Commissioner. Maher as transferee petitioned for a redetermination of transferee liability for the alleged deficiencies in the corporate returns of Selectivend. The cases were consolidated for trial below.

The Tax Court held that the transactions in question constituted a redemption of stock under § 304(a)(1) of the Internal Revenue Code of 1954 which was essentially equivalent to a dividend under § 302, and taxable as such under § 301(a) in 1963 to the extent of Selectivend's earnings and profits. Having so ruled, the Tax Court held that taxpayer had not received dividends in 1965, 1966 and 1967, the years in which payments were actually made on the notes, and that, therefore, Selectivend was entitled to the deductions it had claimed for the amounts paid as interest on the notes. Finally, the Tax Court held that taxpayer was liable as transferee for taxes due from Selectivend in 1964 and 1965.[2] From the decisions entered pursuant to these determinations, the taxpayer has appealed, and the Commissioner has filed protective appeals.

The issues presented on appeal are: (1) whether the transfer by taxpayer to Selectivend of his rights in the Selvex stock in exchange for the assumption by Selectivend of taxpayer's liability on the two notes constituted a redemption of stock under § 304(a)(1)[3] of the Internal Revenue Code of 1954 which was equivalent to a dividend under § 302[4] and is therefore taxable un-

---

2. The Commissioner has assessed additional transferee liability against taxpayer based on adjustments to a 1964 net operating loss and investment credit carryover. The availability of the carryovers hinged upon certain disputed issues which were resolved in favor of the Commissioner in Johnson v. United States, 70–1 U.S. T.C. ¶ 9432 (W.D.Mo.1970).

3. Sec. 304. Redemption through use of related corporations.
   (a) Treatment of certain stock purchases.—
   (1) Acquisition by related corporation (other than subsidiary).—For purposes of sections 302 and 303, if—
   (A) one or more persons are in control of each of two corporations, and
   (B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control, then (unless paragraph (2) applies) such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock. In any

such case, the stock so acquired shall be treated as having been transferred by the person from whom acquired, and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation. * *

4. Sec. 302. Distributions in redemption of stock.
   (a) General Rule.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.
   (b) Redemptions treated as exchanges.—
   (1) Redemptions not equivalent to dividends.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.
   (2) Substantially disproportionate redemption of stock.—
   (A) In general.—Subsection (a) shall apply if the distribution is sub-

der § 301(a) [5] at ordinary income rates; (2) if dividend income is held to be taxable to taxpayer as a result of the transactions, whether it is taxable in 1963, the year in which taxpayer's liability on the contract was assumed by Selectivend, or in 1965, 1966 and 1967, the years of payment; (3) if dividend income is held to be taxable in the years 1965–67, whether the interest paid by Selectivend was properly deducted on its corporate returns for those years, or whether such amounts were additional dividend income to taxpayer; and (4) whether the statute of limitations bars the Commissioner from assessing transferee liability against taxpayer for any deficiencies determined to be due from Selectivend for the taxable years 1964 and 1965.

We affirm the determination that the transaction constituted a redemption of stock equivalent to, and taxable as, a

dividend, and we do so on the basis of the Tax Court's opinion.

However, for reasons stated below, we disagree with the Tax Court's holding that the dividend was received in 1963, the year in which Selectivend assumed taxpayer's liability on the notes. We hold that taxpayer received dividends in 1965, 1966 and 1967, in the amount of the actual payments of principal and interest made by Selectivend on the notes.

## I. WHEN TAXABLE

Dividends have been deemed received when the taxpayer has received an economic benefit as a result of a payment made to him or for his benefit by a corporation. Commissioner of Internal Revenue v. Riss, 374 F.2d 161, 167 (8th Cir. 1967); Noble v. Commissioner of Internal Revenue, 368 F.2d 439, 443 (9th Cir. 1966); Sullivan v. United

---

stantially disproportionate with respect to the shareholder.

(B) Limitation.—This paragraph shall not apply unless immediately after the redemption the shareholder owns less than 50 percent of the total combined voting power of all classes of stock entitled to vote.

\*　　\*　　\*　　\*　　\*

(c) Constructive ownership of stock.—
(1) In general.—Except as provided in paragraph (2) of this subsection, section 318(a) shall apply in determining the ownership of stock for purposes of this section.

\*　　\*　　\*　　\*　　\*

(d) Redemptions treated as distributions of property.—Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies.

\*　　\*　　\*　　\*　　\*

5. Sec. 301. Distributions of property.
(a) In general.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317 (a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

(b) Amount distributed.—
(1) General rule.—For purposes of this section, the amount of any distribution shall be—
(A) Noncorporate distributees.—If the shareholder is not a corporation, the amount of money received, plus the fair market value of the other property received.

\*　　\*　　\*　　\*　　\*

(2) Reduction for liabilities.—The amount of any distribution determined under paragraph (1) shall be reduced (but not below zero) by—
(A) the amount of any liability of the corporation assumed by the shareholder in connection with the distribution, and
(B) the amount of any liability to which the property received by the shareholder is subject immediately before, and immediately after, the distribution.

(3) Determination of fair market value.—For purposes of this section, fair market value shall be determined as of the date of the distribution.

(c) Amount taxable.—In the case of a distribution to which subsection (a) applies—
(1) Amount constituting dividend.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

\*　　\*　　\*　　\*　　\*

States, 363 F.2d 724, 728 (8th Cir. 1966), cert. denied, 387 U.S. 905, 87 S. Ct. 1683, 18 L.Ed.2d 622 (1967); Idol v. Commissioner of Internal Revenue, 319 F.2d 647, 651 (8th Cir. 1963); Sachs v. Commissioner of Internal Revenue, 277 F.2d 879, 883 (8th Cir.), cert. denied, 364 U.S. 833, 81 S.Ct. 63, 5 L.Ed.2d 59 (1960). An assumption, reduction or cancellation of a liability of a taxpayer by a corporation, to be sure, may give rise to the requisite "economic benefit." The underlying theory of a realization of income under these circumstances is the freeing of the debtor's assets from liability for the debt. Sullivan v. United States, *supra*, at 729. Hence the general rule is that there is no income unless and until there has been a release of liability. 1 Mertens, Law of Federal Income Taxation, § 11.19. In the present case, while Selectivend contractually assumed primary liability on the two notes, taxpayer remained secondarily liable until the notes were actually paid. Whatever "economic benefit" may have accrued to taxpayer from the reduction of his liability from primary to secondary is clearly incapable of being evaluated on an objective basis.[6]

Our research discloses that in the small number of cases in which a corporation has assumed a personal obligation of a shareholder in one year, and satisfied that obligation in a later year, courts have generally found with little or no discussion that the shareholder realized a taxable dividend only in the year or years in which the obligation was paid. Vinnell v. Commissioner of Internal Revenue, 52 T.C. 934 (1969);

Kleedon v. Commissioner of Internal Revenue, 3 CCH Tax Ct. Mem. 1123 (1944); *Cf.* Sachs v. Commissioner of Internal Revenue, 277 F.2d 879 (8th Cir. 1960); Wall v. United States, 164 F.2d 462 (4th Cir. 1947); Schalk Chemical Co. v. Commissioner of Internal Revenue, 32 T.C. 879 (1959), aff'd, 304 F.2d 48 (9th Cir. 1962). *But cf.* Wiseman v. United States, 259 F.Supp. 90 (D.Me.), aff'd, 371 F.2d 816 (1st Cir. 1967).

The cases relied upon by the Tax Court in deciding that taxpayer should be taxed in the year that Selectivend assumed his obligation are inapposite. In those cases the assumption of a mortgage by a buyer was declared immediate gain to the seller on the ground that to do otherwise would "defeat the intention of another [section of the Act] or . . . frustrate the Act as a whole . . . ." Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 13, 67 S. Ct. 1047, 1054, 91 L.Ed. 1301 (1947). We are not faced with similar difficulties here.

## II. INTEREST

The Commissioner concedes that if the dividend occurred in 1963, Selectivend correctly deducted from its corporate returns the interest payments made in 1965, 1966 and 1967, since, under that view, the interest payments were made solely on account of a corporate obligation. If, however, as we have held, the dividends are taxable in the years of payment, then the Commissioner argues that the interest payments made by Se-

---

6. The Commissioner in his brief recognized the difficulty in evaluating the "economic benefit" which resulted from the assumption of taxpayer's liability in 1963:

"One possible obstacle to treating a taxpayer as having received a dividend in the year in which his liability is assumed by a corporation is that there may be some degree of uncertainty as to whether the corporation will in fact make the payments on the indebtedness as promised. And, if the corporation fails to make such payments,

and the taxpayer remained secondarily liable on such an indebtedness, then the taxpayer might be called upon to pay off that indebtedness. It is this possibility, that the taxpayer might ultimately be required to pay the indebtedness which had theretofore been assumed by the corporation, which offers some support for viewing such a dividend as not realized by a taxpayer until actual payment of the indebtedness."
Brief for Commissioner at 38–39.

lectivend were additional dividend income to taxpayer, and non-deductible by Selectivend. We agree.

The usual meaning of the term "interest" is the amount which one has contracted to pay for the use of borrowed money. Old Colony R. Co. v. Commissioner of Internal Revenue, 284 U.S. 552, 561, 52 S.Ct. 211, 76 L.Ed. 484 (1932). If Selectivend's assumption of taxpayer's liability was not taxable as a distribution of property to him until actual payments on the notes were made, it follows that the attendant contractual liability for interest payments became part and parcel of taxpayer's obligation which the corporation effectively discharged only by payment. Therefore, the interest payments were additional dividend income to taxpayer in the years of payment.

### III. TRANSFEREE LIABILITY

■■ Taxpayer stipulated that he is liable as transferee of the assets of Selectivend for any income tax deficiencies due from the corporation in 1964 and 1965 unless the statute of limitations has run. However, taxpayer argues that since no notice of deficiency for 1964 and 1965 was sent to Selectivend within three years after the corporate returns were filed, the statute of limitations, § 6501(a), bars any assessment against Selectivend and precludes any liability of Selectivend and, a fortiori, any liability of a transferee.

It is true that all reasonably possible remedies against the transferor must be exhausted before the transferee may be held liable. 9 Mertens, Law of Federal Income Taxation, § 53.26. However, it is equally well settled that once a corporation has dissolved, the Commissioner is not required to proceed against it before asserting transferee liability.[7] Selectivend was liquidated in 1967, several months before the expiration of the period of limitations for its 1964 taxable year. As found by the Tax Court, taxpayer agreed within the applicable period of limitations, § 6901(c), to an extension of time within which the Commissioner might assess transferee liability. Subsequent assessments were made within the extended period of limitations for the year 1964 and within the statutory period for the year 1965.

In short, as a matter of federal tax procedure, it is well established that the Commissioner's assessment of transferee liability against taxpayer was both correct and timely.

Inasmuch as we disagree with the Tax Court's finding that taxpayer received taxable income in 1963, we remand to that court for computation of the tax liability in accordance with the dictates of this opinion. Costs to be taxed against taxpayer.

---

7. *See* the opinion of the Tax Court, 55 T.C. at 457, and cases cited therein.