PETER AND CHRISTINE SCHAEFERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; HANS G. ESCHRICHT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schaefers v. Commissioner
Docket Nos. 5212-82, 5213-82.
United States Tax Court
T.C. Memo 1984-627; 1984 Tax Ct. Memo LEXIS 46; 49 T.C.M. (CCH) 228; T.C.M. (RIA) 84627; December 4, 1984. *46 Held: Purported sale by controlling shareholders of their stock in one corporation to the other corporation treated as a dividend. Secs. 304, 302, and 301, I.R.C. 1954, applied. Marvin D. Yaker, for the petitioners. William F. Halley, for the respondent. WHITAKER MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in the Federal income tax liability of petitioners Peter Schaefers and Christine Schaefers, [1] husband and wife, docket No. 5212-82, for the calendar year 1977 in the amount of $27,912. Respondent also determined a deficiency in the Federal income tax liability of petitioner Hans G. Eschricht, docket No. 5213-82, for the calendar year 1977 in the amount of $24,677.After concessions by the Schaefers, the only issue involved in each of the consolidated dockets arises out of the sale by Messrs. Schaefers and Eschricht of their stock in one controlled corporation to a second controlled corporation. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time *47 of the filing of the petition in docket No. 5212-82, the Schaefers resided in the State of New Jersey. On the date on which he filed his petition, Mr. Eschricht (who is unmarried) resided in St. Croix, Virgin Islands. Endicott Overseas Express, Inc. (Endicott), is a New York corporation incorporated in 1941. Mr. Schaefers was first employed by Endicott in May of 1957 at which time all of the issued and outstanding stock of Endicott was owned by one Max Langner. In 1966, Mr. Langner transferred to Mr. Schaefers a 25 percent interest in the stock of Endicott. [2] At all material times, Endicott has been engaged in handling shipments of household goods, especially to foreign destinations, specializing in containerized shipments. In 1969, Baggage International Corp. (Baggage) was incorporated under the laws of the State of New York. Its stock was owned by Messrs. Langner and Schaefers in the same proportions as their ownership of Endicott. Baggage was formed to handle containerized shipments of personal effects of individuals traveling from the United States to foreign countries, primarily to utilize spare space in the containers used by Endicott for the shipment of household goods. *48 On an unknown date prior to October 9, 1975, Mr. Eschricht became employed by both Endicott and Baggage. On October 9, 1975, Mr. Langner sold all of his shares in Endicott and in Baggage to Messrs. Schaefers and Eschricht so that thereafter Mr. Schaefers owned 12 shares of each corporation, or 60 percent of the outstanding stock, and Mr. Eschricht owned 8 shares, or 40 percent of the outstanding Stock. Mr. Schaefers agreed to pay $128,800 for the Endicott stock and $32,200 for the Baggage stock, of which sums $91,448 with respect to the Endicott stock and $22,862 with respect to the Baggage stock was to be paid in installments.The purchase price for the eight shares of Endicott stock acquired by Mr. Eschricht was $147,200, of which $104,512 was payable in installments and the purchase price for his shares of Baggage was $36,800, of which $26,128 was payable in installments. The stock certificates were pledged to secure the unpaid purchase price and the certificates were physically held by an escrow agent. Mr. Langner died on April 9, 1977. For reasons which are not entirely clear, Messrs. *49 Schaefers and Eschricht determined that Baggage should become a wholly owned subsidiary of Endicott. [3] To accomplish the transaction, at a special meeting of stockholders and directors of Endicott held on May 5, 1977, Endicott agreed to acquire the outstanding shares of Baggage from its two shareholders at the price of $7,800 per share, the acquisition to be closed prior to May 31, 1977. [4] *50 The consideration paid to each of the shareholders by Endicott consisted of the cancellation of indebtedness in the amounts of $93,600 owed by Mr. Schaefers and $62,400 owed by Mr. Eschricht. [5] During the latter part of 1977 and in January 1978, *51 Endicott moved its principal place of business from New York City to North Bergen, New Jersey, incurring substantial costs in the process.Both on May 31, 1977, the end of Endicott's 1977 fiscal year, and on May 31, 1978, the end of its 1978 fiscal year, Endicott had retained uncommitted earnings adequate in amount to pay dividends to its two shareholders in the aggregate amount of the purchase price of the Baggage stock. OPINION Petitioners' argument insubstance is that business considerations required the amalgamation of Endicott and Baggage. As to mechanics, they argue that the escrow agent would not approve an issuance of additional Endicott shares which arguably would have been required for a technical merger of Baggage into Endicott or for a section 351 transaction but the escrow agent did approve a sale of the Baggage shares to Endicott. Thus, petitioners contend they had no choice but to effect a taxable sale of their Baggage shares to Endicott in exchange for cancellation of indebtedness and that there was no tax avoidance purpose. [6] Petitioners also argue that the 1977 sale of Baggage stock to Endicott was a step in a transaction which commenced in October 1975 with the *52 sale by Mr. Langner of his stock to Messrs. Schaefers and Eschricht. Respondent contends that pursuant to section 304(a)(1) [7] the sale of Baggage stock to Endicott should be terated as a constructive redemption of shares of Endicott stock, to be analyzed under section 302 and that the assumption of indebtedness should be treated as a distribution of property taxable as a dividend under section 301. We agree with respondent. Insofar as pertinent, section 304(a) reads as follows: [8]
(a) Treatment of Certain stock Purchases.-- (1) Acquisition by related corporation (other than subsidiary).--For purposes of sections 302 and 303, if-- (A) one or more persons are in control of each of two corporations, and (B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control, then (unless paragraph *53 (2) applies) such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock. In any such case, the stock so acquired shall be treated as having been transferred by the person from whom acquired, and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation. The instant transaction is the classical example of the application of section 304(a). One or more persons, i.e. Messrs. Schaefers and Eschricht, owned all of the stock of Endicott and of Baggage, and thus were in control of those two corporations.The cancellation of indebtedness is equivalent to a distribution of a cash dividend which the shareholder then uses to pay the debt. Benjamin v. Commissioner,66 T.C. 1084, 1115 (1976), affd. 592 F.2d 1259 (5th Cir. 1979); McGinty v. Commissioner,38 T.C. 882, 884 (1962), affd. 325 F.2d 820 (2d Cir. 1963). Therefore, Messrs. Schaefers and Eschricht received money and under section 317 property includes money. We are, therefore, directed to section 302, pursuant to which the consideration paid for the shares is taxed as a dividend under section 301 unless section 302(b) is applicable. *54 Skipping for a moment section 302(b) petitioners argue that this redemption transaction and the sale by Mr. Langner two years earlier should be integrated as parts of a single transaction and, therefore, in some fashion there would be a "substantially disproportionate" redemption of stock within the meaning of section 302(b)(2). The short answer is that the facts do not support the argument. There is no evidence that the conversion of the brother-sister group into a parent-subsidiary was contemplated at the time of or had anything to do with the Langner sale of stock to Messrs. Schaefers and Eschricht. Basic to any consideration of section 302(b) is the fact that section 318 is expressly made applicable. Section 302(c). Hence the shares of Baggage owned by Endicott are attributed to its shareholders. Before the May 31, 1977, sale, the two shareholders owned respectively 60 and 40 percent of the shares of each corporation; after the sale they each owned all of the shares of each corporation in the same proportions. Obviously there was no complete termination of the shareholder's interest within the meaning of section 302(b)(3). *55 [9] Petitioners' case under section 302(b)(2) is no better. Before the transaction, Messrs. Schaefers and Eschricht together owned 100 percent of the stock of each corporation. After the sale to Endicott of the Baggage shares, the two individuals still owned 100 percent of Endicott, in the proportions of 60 percent and 40 percent which were unchanged by the transaction. Under section 318 as modified by section 304(b)(1), each shareholder is deemed to own his proportionate part of the 100-percent owned subsidiary so that each of the shareholders is deemed to own, respectively, 60 percent and 40 percent of Baggage, exactly the same stock ownership which they held before the purported sale. Petitioners argue that this transaction should be combined with the sale by Mr. Langner to them in 1975 and since in that transaction Mr. Langner completely terminated his interest in both corporations, there was, as to Mr. Langner at least, a substantial change *56 in his proportionate interest in the two corporations. However, there are no facts to support the contention that the two transactions were in any way related and, even if there were and if the sale by Mr. Langner could be recast as equivalent to a redemption of his shares, the change in his stock ownership simply has no effect on the fact that these petitioners received a dividend equivalent. Thus we are left to consider whether the sale and cancellation of debt was or was not essentially equivalent to a dividend within the meaning of section 302(b)(1). We agree with respondent that it should be treated as a dividend. Both parties rely on United States v. Davis,supra, but petitioners' reliance is misplaced. Petitioners strongly emphasize that the amalgamation of the two corporations was motivated by nontax business reasons. Their evidence of business purpose is, however, far from convincing. Mr. Schaefers' testimony as to the advice given by SGA Financial Corporation is not documented. The loan application and approval, as already pointed out, are entirely consistent with affiliated corporation status for the two corporations. Nevertheless, the existence of a business purpose *57 is immaterial in determining dividend equivalency under section 302(b)(1). United States v. Davis,supra.Petitioners also argue that they intended a section 351 transaction but were prevented from doing so by the escrow agent. The fact that an alternative method might have accomplished the same goal at a lower tax cost is simply immaterial. See, e.g., McGinty v. Commissioner,supra.
This case is not essentially different from Paparo v. Commissioner,71 T.C. 692 (1979). By its express terms, section 302(a) does not apply and petitioners are fully within the scope of section 301 pursuant to the express language of section 302(d). Petitioners do not argue that Endicott had insufficient earnings and profits to support treating the consideration paid by Endicott for the Baggage shares as dividends to each of the two shareholders.Respondent must prevail. Petitioners argue finally that under Maher v. Commissioner,469 F.2d 225 (8th Cir. 1972), affg. in part and revg. in part 55 T.C. 441 (1970), supplemented in 56 T.C. 763 (1971), only the amounts of indebtedness actually paid or satisfied during 1977 can be a dividend in that year. This argument can only be grounded on evidence that *58 a portion of the consideration was the assumption by Endicott of obligations of petitioners to the estate of Langner rather than cancellation of indebtedness owing by the shareholders to Endicott or to Baggage. Respondent on brief refers to Rev. Rul. 77-360, 1977-2 C.B. 86, and concedes that if we find that any portion of any assumed liability was not paid in 1977, taxation of such amount would be deferred until paid. However, as we noted in footnote 5 above, on this record there is no basis for finding that some portion of the consideration was the assumption of obligations of the shareholders to the estate of Langner, or even if we could so find, there is no evidence on which to make a determination that some portion of such an assumption related to payments due and to be paid in years subsequent to 1977. In this respect, petitioners simply have not carried their burden of proof. Rule 142. Decisions will be entered for the respondent in each case.
Footnotes
1. Mrs. Schaefers' only connection with the matters in issue arises from the filing of a joint Federal income tax return for the year 1977 with her husband.↩
2. There is no evidence as to the consideration (if any) received by Mr. Langner for this transfer.↩
3. Mr. Schaefers testified that SGA Financial Corporation recommended this move in connection with obtaining a Small Business Administration guaranteed loan but there was no corroboration of this testimony and the loan documents do not reflect the transaction. See footnote 4, infra.↩
4. While the stipulation recites that the purchase by Endicott occurred on May 31, 1977, the Small Business Administration loan application, also a stipulated document, recites that Baggage was owned by Messrs. Schaefers and Eschricht. The loan application is dated as of Aug. 31, 1977, and appears to have been signed by Mr. Schaefers on Dec. 19, 1977. However, the parties have consistently treated the transaction as having occurred on May 31, 1977; hence, we will ignore this discrepancy. 5. The stipulation recites that the consideration paid to each shareholder was the cancellation of indebtedness of each to Endicott. Testimony by Mr. Schaefers was to the effect that a portion of the $93,600 purchase price was paid by the assumption by Endicott of a portion of Mr. Schaefers' deferred obligations to the estate of Mr. Langner arising out of his purchase of the Endicott and Baggage stock.Documentary evidence is both incomplete and inconclusive. On this record we are unable to resolve the inconsistencies between the stipulation, the testimony and the documents. Mr. Eschricht did not testify and Mr. Schaefers' testimony as to the assumption of Mr. Eschricht's obligations is too abbreviated to be understandable. Moreover, even if there were in part an assumption of indebtedness of the shareholders to Mr. Langner, there is no evidence as to which installments were assumed and when paid. We, therefore, have no choice but to give controlling effect to the stipulation.↩
6. See footnote 5, above. Apparently, no consideration was given by the parties to a capital contribution of the Baggage stock to Endicott.↩
7. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
8. By its express terms, sec. 304(a)(2) is inapplicable.↩
9. Even if we were to integrate the Langner sale with the 1977 sale of Baggage stock to Endicott, petitioners' position would not be improved. It is their status which is material for the application of section 302(b)(3), not Mr. Langner's.↩